COMMONWEALTH *vs.* ROBERT T. BUMPUS.

Suffolk.    May 2, 1972. — December 4, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Identification. Probable Cause. Arrest. Practice, Criminal,* Assistance of counsel, Examination of jurors, Location of defendant in court room, Trial of issues together, Charge to jury. *Constitutional Law,* Trial by jury, Due process of law. *Evidence,* Of reputation, Mitigation of penalty, Credibility of witness.

Where a defendant in a criminal case had been detained for a police line-up pursuant to a court order upon evidence which established probable cause for his arrest, a witness's identification of him in the line-up was admissible in evidence.  [674–677]

At the trial of indictments, there was no error in admitting in evidence an in-court identification of the defendant by a witness whose two previous identifications of him from photographs had been excluded as suggestive, where the judge found, on sufficient evidence, that the in-court identification was the result of means sufficiently distinguishable to be purged of the primary taint.  [678]

The absence of counsel is not fatal to the admissibility of a pre-trial identification of a defendant from photographs.  [678]

At the trial of indictments, a witness's in-court identification of the defendant was properly admitted in evidence notwithstanding her previous inability to identify the defendant either in a police line-up in which he was present, or in a photograph of the line-up; although the police had indicated to the witness that the defendant was in the photograph, there was not such suggestiveness as would violate due process.  [678–679]

At the trial of indictments, the total procedure for jury selection was not such as to deprive the defendant of an impartial jury, notwithstanding the exclusion of one juror who arguably was qualified to serve.  [679]

At the trial of indictments, it was within the discretion of the judge whether to allow any questions to prospective jurors other than those required by statute, and it was not an abuse of discretion to refuse to ask the jury questions relating to racial prejudice.  [679–680]

It was within the discretion of the judge to determine whether to require a defendant to sit in the dock or elsewhere during a trial. [680]

A defendant in a criminal case is not entitled to separate trials on the issues of guilt, mental responsibility, and punishment. [681]

Illustrations given by the judge in a criminal case to assist the jury in deciding the question of reasonable doubt, when considered with the charge as a whole, appropriately conveyed the concept of reasonable doubt to the jury. [681–682]

Where a conviction of prostitution was introduced in evidence to impeach the credibility of a witness, the judge did not err in pointing out that the conviction might have little bearing on the witness's truthfulness. [682–683]

INDICTMENTS found and returned in the Superior Court on September 10, 1970.

The cases were tried before *McLaughlin*, C.J.

*Roger C. Park* (*Norman S. Zalkind* with him) for the defendant.

*Newman A. Flanagan*, Assistant District Attorney (*Alvan Brody* with him) for the Commonwealth.

HENNESSEY, J. The defendant appeals under G. L. c. 278, §§ 33A–33G, from a conviction under an indictment charging him with the murder of Edward Grenier and from convictions under four other indictments charging him with the armed robbery of four other persons. The jury recommended, as to the murder conviction, that the death penalty not be imposed.

On July 9, 1970, a robber entered the Mount Vernon Co-operative Bank on Boylston Street, in the city of Boston, vaulted over the teller's counter with a pistol in his hand and robbed four of the tellers. He took about $5,900 from them. Edward Grenier, a bank vice-president, tackled the robber and attempted to wrest the pistol from him. They wrestled and Grenier remained on the floor of the bank. The robber turned, went to the door, turned back, faced Grenier and fired one shot, killing him.

The robber proceeded out of the bank and went in the direction of the Boston Public Library on Dartmouth Street and headed toward Flagston Street. A taxicab driver named James E. Taylor was hailed by a man in this area and drove the individual to Annunciation Road.

Gail O'Brien, a bookkeeper, identified the defendant as the bank robber. Rose Lowden, a teller, also identified the defendant as the bank robber. Janice Michael, a teller, testified that the defendant looked like the robber. The witness Taylor testified that the defendant was the man who had ridden in his cab after the robbery, that the defendant gave him between $160 and $180 from a paper bag, and that the defendant had left a sneaker and a gun in the cab. The robber had worn sneakers and had left one in the bank. From other evidence the jury could properly infer that the sneaker left in the taxicab was the mate of the one left in the bank, that the gun left in the taxicab was the weapon which fired the fatal bullet, and that the paper bag described by Taylor resembled a bag carried by the robber.

Elizabeth H. Kappel, a sister-in-law of the defendant, testified that on July 20, 1970, at her home in Waterloo, Ontario, the defendant stated to her that he had robbed a bank.

The defendant argues that the trial judge erred in denying the defendant's motion for separate trials on the issues of guilt, responsibility and punishment; in requiring the defendant to sit in the dock throughout the trial; in various rulings concerning the selection and excusing of jurors; in denying the defendant's motion to suppress the identification testimony of the witnesses Lowden, Michael, O'Brien and Taylor; in various other rulings on the admission of evidence; and in various instructions and omissions in the charge to the jury.

1. Several of the defendant's assignments of errors relate to identification testimony. Among those argued is the defendant's contention that he was unlawfully detained under court order and forced to participate in a lineup. Therefore, he argues, pre-trial and in-court identification of the defendant by witness Gail O'Brien should have been excluded as the product of an illegal arrest.

Two weeks after the crime, an attorney representing the Boston police department appeared before a judge

of the Superior Court and sought and procured an order which compelled the defendant to submit to identification procedures. The defendant was neither present nor represented by counsel at this hearing. Until this time the defendant had neither been arrested nor interrogated. The defendant does not contend that the resulting lineup proceedings were suggestive or otherwise improper and he agrees that he was represented by counsel at the lineup. He was viewed and identified by the witness O'Brien at the lineup. Photographs of the lineup were taken.

The defendant's contention, that if the detention was unlawful, the in-court identification by the witness O'Brien must be excluded, is of doubtful validity. Exclusion only of evidence of the lineup and the identification made at that time appears to be the appropriate relief, if any is required, particularly since the trial judge warrantably found that the in-court identification, by clear and convincing evidence, had a basis independent of the pre-trial lineup. Compare *United States* v. *Wade,* 388 U. S. 218, and *Davis* v. *Mississippi,* 394 U. S. 721, 724. In the *Davis* case, it was held that the fingerprints of the defendant obtained during an illegal detention must be excluded from evidence. Perhaps, also, in the case before us, photographs of the lineup and evidence of witnesses' identification of the defendant as shown in those pictures should also have been excluded, if the detention which gave rise to the lineup was unlawful. However, we need not decide these issues, since we have concluded that the defendant was detained for the lineup upon evidence which established probable cause for his arrest.

The evidence which we conclude showed probable cause was produced at the hearing by the attorney representing the police department, and included sworn testimony by policemen. First of all, it was shown before the judge that there was a substantial correlation between the facts known about the bank robber and the facts known about the defendant. Police testimony, and a police "wanted"

bulletin entered in evidence, showed that witnesses described the robber as a good-looking negro with dark skin, twenty-five to twenty-seven years old, about six feet two inches tall, slim build, carrying a revolver, who left the taxicab of James Taylor at Annunciation Road in Roxbury. By comparison, evidence about the defendant showed him to be a negro with dark skin and a "beautiful" face, about six feet one inch tall, weighing 145 pounds, who owned and carried a handgun, and who had previously lived and presently had friends in the Annunciation project.

It was also shown by police testimony that Elizabeth and Bruce Kappel, the defendant's sister-in-law and her husband, had informed police that the defendant had visited them at their home in Ontario, Canada, on July 20 (eleven days after the robbery at the Mount Vernon Cooperative Bank) and told them that he had robbed a bank in Boston a couple of weeks before. These informants stated that the defendant had a rifle, a shotgun, and a handgun, and was driving a new red Mustang automobile which he said he had bought for $600. He also talked to them about buying a new house. In contrast to these facts, other evidence showed that the defendant was unemployed. The reliability of the Kappels as informants was adequately shown (*Commonwealth* v. *Stevens, ante,* 24, 27–28, and cases cited) by evidence of detailed information furnished to the police by a Boston lawyer, by a detailed corroborating telegram which had been received from the Ontario police, and by detailed evidence of telephone conversations between Boston police and the Kappels.

The Commonwealth argues that a showing of something less than probable cause for arrest would be sufficient to detain the defendant for a lineup. The support for this virtually unprecedented contention, the Commonwealth argues, lies in the fact that the police sought a narrowly circumscribed order from a judge. See *Wise* v. *Murphy,* 275 Atl. 2d 205, 208 (D. C. App.) (but see

dissenting opinions). Compare *Davis* v. *Mississippi*, 394 U. S. 721, 728; compare also *Terry* v. *Ohio*, 392 U. S. 1, 8–31. See generally McGowan, Constitutional Interpretation and Criminal Identification, 12 Wm. & Mary L. Rev. 235; Am. Law Inst., A Model Code Of Pre-Arraignment Procedure, § 120.1 (2), Commentary at 132–136, and § 210.1 (7), Commentary at 163–164 (Official Draft No. 1, 1972). In view of our conclusion that probable cause for arrest was shown, it is unnecessary for us to consider this argument further.

2. The defendant challenges the identification testimony of three other witnesses. We first consider the testimony of Janice Michael, a teller at the bank. Although she was present at the police station, she was not brought to the lineup. Instead, she was shown a single photograph of the defendant and his bride in wedding attire, and identified him as the robber. The judge found that the wedding photograph was suggestive and was the product of an illegal search. He excluded the witness's identification of the defendant in both the wedding photograph and in a lineup photograph. She was allowed to identify the defendant at the trial and the defendant argues that this, too, should have been excluded. There was no error. The circumstances do not indicate that the photographic identification procedure was so impermissibly suggestive as to rise to due process proportions. *Simmons* v. *United States*, 390 U. S. 377, 384. While the parties have stipulated that the wedding picture was the product of an unlawful search, the trial judge's finding that the in-court identification of the defendant by this witness was the result of means sufficiently distinguishable to be purged of the primary taint, is supported by the evidence. See *Wong Sun* v. *United States*, 371 U. S. 471; *United States* v. *Wade*, 388 U. S. 218.

We next consider the defendant's contention that the admission in evidence of both pre-trial and in-court identification by James Taylor, the taxi driver, was error because of the suggestive effect of repeated showings of the

lineup photographs and because the witness viewed these photographs in the absence of counsel. There was no error.

James Taylor testified that the defendant was the person who had hailed his taxicab a short distance from the bank on the day of the crime. On cross-examination the defendant introduced evidence of the pre-trial lineup and Taylor's failure to identify Bumpus. On redirect examination, while the Commonwealth attempted to show why the witness failed to identify Bumpus at the lineup (there was evidence that Taylor did not want to get involved), evidence of lineup photograph showings was introduced.

The defendant does not and could not properly contend that the lineup photographs were suggestive. Nor does he cite other facts which would make the showings themselves suggestive. As to the defendant's absence of counsel claim, there is no right to counsel when a witness views a photograph, *Commonwealth* v. *Ross*, 361 Mass. 665, 673–674, and if there were, the defendant does not show us that these showings occurred after indictment or complaint. See *Kirby* v. *Illinois*, 406 U. S. 682; *Commonwealth* v. *Lopes*, *ante*, 448. Hence, evidence of both pre-trial and in-court identification by James Taylor was properly admitted.

Finally, the defendant contends that Rose Lowden's identification testimony should have been excluded. Rose Lowden, another bank teller present during the crime, was present at the lineup, but failed to identify the defendant. She was subsequently shown the lineup photograph, and could not identify the defendant. However, at trial, she did identify the defendant as the bank robber.

The defendant argues that the pre-trial photographic showing was suggestive. There is no evidence that the defendant was pointed out to the witness when she was shown the photograph, but the police did indicate that the defendant was in the picture. While there was an element of suggestiveness in this procedure, we cannot say that these facts show such suggestion as to violate due

process. See the *Simmons* case, *supra*. The discrepancies in this witness's identification were, appropriately, the subject of extensive cross-examination before the jury.

3. Some jurors were excluded for cause by reason of their answers to certain questions related to capital punishment. The defendant assigns as error the alleged exclusion of jurors whose opinions on capital punishment were such as to allow them to find the defendant guilty of a crime punishable with death, but who were inclined to recommend mercy. He argues that the exclusion of these jurors is not only not required by G. L. c. 278, § 3, but also denies the defendant an impartial jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

The judge asked prospective jurors whether they were opposed to capital punishment. However, in all but one possible instance, jurors were excluded only after they answered in substance that they could not find a defendant guilty of a crime punishable by death, regardless of the evidence. See *Commonwealth* v. *Nassar*, 354 Mass. 249, 257. The one possible exception was a juror whose answers to the many questions addressed to him, although somewhat uncertain in their total meaning, can arguably be said to have qualified him for service. Since the judge also excluded those who would refuse to recommend clemency regardless of the evidence, we conclude that the defendant was not by this total procedure deprived of an impartial jury. See *Commonwealth* v. *Mangum*, 357 Mass. 76, 79–80; *Commonwealth* v. *Connolly*, 356 Mass. 617, cert. den. sub nom. *Connolly* v. *Massachusetts*, 400 U. S. 843. *Witherspoon* v. *Illinois*, 391 U. S. 510, is not applicable since the jury in the instant case recommended that the death sentence not be imposed. *Bumper* v. *North Carolina*, 391 U. S. 543, 545. G. L. c. 265, § 2.

4. The defendant next contends that the trial judge erred in refusing to ask jurors at the voir dire the following questions: "Will you be influenced in any way, either pro or con, by the race of Robert Bumpus?"

"Would you be able to give a black man accused of robbery and murder the same benefit of the doubt that you would give to a white defendant?" The judge did ask whether the jurors were sensible or conscious of any bias or prejudice in the matter, in accordance with G. L. c. 234, § 28, but the defendant argues that a general question which does not focus specifically on racial prejudice is insufficient.

We answered this precise question in the negative in *Commonwealth* v. *Lee,* 324 Mass. 714, 717–718, and more recently in *Commonwealth* v. *Ross,* 361 Mass. 665, 682. "It is entirely within the judge's discretion under G. L. c. 234, § 28, and c. 278, § 3, whether to allow any questions other than those which the statutes require." *Commonwealth* v. *Stewart,* 359 Mass. 671, 677. There was no abuse of discretion here. Indeed, the questions proposed by the defendant could have been counterproductive to his purpose.

5. The defendant assigns as error the court's denial of his motions that he be permitted to sit elsewhere than in the dock at trial. He argues that this deprived him of his presumption of innocence before the jury, his right to consult with counsel during trial as guaranteed by the Sixth Amendment to the United States Constitution, and prejudiced him with respect to in-court identification by witnesses. We disagree. The jury are entitled to know who stands accused before them, there is no denial of the Sixth Amendment right to counsel (*Guerin* v. *Commonwealth,* 339 Mass. 731), and it is within the sound discretion of the trial judge whether to grant a defendant's request to sit at counsel's table or elsewhere. See *Commonwealth* v. *Jones, ante,* 497, 500–501.

6. The defendant contends that it was error to exclude, when offered in evidence by him, notes used before trial by a witness who had been introduced by the defendant, which notes the prosecutor had demanded during the cross-examination of this witness. See *Leonard* v. *Taylor,* 315 Mass. 580.

We need not consider this contention, since our exami-

nation of the record and exhibits shows that the entire contents of the notes were disclosed to the jury in the interrogation of the witness.

7. The defendant assigns as error the exclusion of evidence concerning the defendan+'s reputation in the community. There was no error. The court excluded only those questions which would elicit the kind of life the defendant had led. The defendant, in response to an inquiry by the judge, offered this evidence specifically on the issue of clemency and thus the questions were properly excluded. *Commonwealth* v. *McNeil*, 328 Mass. 436, 441. Indeed, this jury recommended clemency. Furthermore, the questions inappropriately sought the personal opinions of the witness, rather than his knowledge of the defendant's reputation. See *Commonwealth* v. *De Vico*, 207 Mass. 251, 253. See also G. L. c. 233, § 21A.

8. The defendant claims error in the refusal to grant him three separate trials on the issues of guilt, mental responsibility, and punishment. There is no constitutional requirement for a bifurcated trial on the issues of guilt and punishment, *McGautha* v. *California*, 402 U. S. 183; *Commonwealth* v. *Stewart*, 359 Mass. 671, 677, and we hold that the same is true as to the issues of participation in the allegedly criminal conduct, and mental responsibility.

9. The defendant contends that the judge erred when he, with no request by the defendant for such an instruction, charged the jury that no presumption could be drawn against the defendant because of his failure to testify. He suggests that this comment had the same practical effect as would a derogatory comment, in violation of *Griffin* v. *California*, 380 U. S. 609. There was no error. *Commonwealth* v. *Sullivan*, 354 Mass. 598, 616–617.

10. The defendant assigns as error certain aspects of the judge's instructions to the jury on reasonable doubt. The defendant argues that it was error for the judge to illustrate the meaning of reasonable doubt by comparing the degree of certainty required to convict to the degree

of certainty a juror would want before he decided to undergo major heart surgery. We have previously approved the practice of alluding to important decisions in the personal lives of jurors in an attempt to explain the concept of reasonable doubt. See *Commonwealth* v. *Libby*, 358 Mass. 617, 621. The inherent difficulty in using such examples is that, while they may assist in explaining the seriousness of the decision before the jury, they may not be illustrative of the degree of certainty required. It may be argued that problems concerning health and medical treatment, such as the illustration used in this case, are sometimes not susceptible to a decision based upon proof beyond a reasonable doubt.[1] Even assuming the validity of that argument in this instance, the instructions as a whole were comprehensive, were based upon traditional language, and adequately conveyed the concept of reasonable doubt to the jury. See *Holland* v. *United States*, 348 U. S. 121, 140.

The defendant fails in his argument that the judge's instruction that a reasonable doubt "has to be a doubt in your mind that you can stand up in the jury room and argue with principle and integrity to your fellow jurors" was error. In the entire context, this language was figurative and symbolic rather than, as the defendant argues, an instruction which could or should have been taken literally by the jury.

The defendant also argues that it was error to fail to charge the jury that a strong probability of guilt is insufficient to convict and that the standard is not one of the preponderance of the evidence. The defendant was not entitled to have the charge phrased in the exact language requested by him since the instructions, taken as a whole, conveyed the meaning established by law. *Commonwealth* v. *Martorano*, 355 Mass. 790. See *Commonwealth* v. *Webster*, 5 Cush. 295, 320.

11. The defendant next contends that the judge erred

---

[1] Such illustrations undoubtedly are of assistance to the jury, but the examples must be selected and described with care, for the reasons shown in the above discussion.

in expressing his opinion about the value of prostitution convictions in weighing the credibility of a prosecution witness. See G. L. c. 233, § 21. The defendant used a prostitution conviction to impeach a witness produced by the Commonwealth. The instruction to which the defendant objects is as follows: "If it was a conviction which involved basic honesty, such as perjury or larceny, it may well be helpful to you. If it's the crime of prostitution, as this young lady is charged with, it may not help you at all as to whether she is truthful or untruthful."

There was no error. Our cases have recognized that which common sense suggests: convictions of some crimes may affect credibility more or less than others. For example, in *Commonwealth* v. *Hall,* 4 Allen 305, 307, we said, "It is obvious that some offences that are not felonies may affect one's credibility much more than some felonies." And, in *Quigley* v. *Turner,* 150 Mass. 108, 109, we said, "Undoubtedly a conviction for some offences should affect this [credibility] but slightly, perhaps not at all."

Since the law recognizes that crimes may affect credibility in varying degrees, the judge may include this in his charge to the jury, provided, however, that he specifically informs the jurors that they are the ultimate arbiters of credibility, and that it is for them to decide whether, and to what extent, a crime may affect credibility. *Hathaway* v. *Checker Taxi Co.* 321 Mass. 406, 410. See e.g. *Commonwealth* v. *French,* 357 Mass. 356, 406, A.-42. Those instructions were given in this case.

12. We have considered all the other questions argued by the defendant, and have found no error.

13. We have, in accordance with our duty as to the murder indictment under G. L. c. 278, § 33E, as amended through St. 1962, c. 453, reviewed the entire evidence and are of opinion that justice does not require a new trial or an entry of a verdict of a lesser degree of guilt on the murder indictment.

*Judgments affirmed.*