COMMONWEALTH *vs.* MILTON W. JONES, JR.

Suffolk. December 6, 1977. — June 7, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Identification. Practice, Criminal,* Probable cause hearing, Motion to suppress.

Evidence at a hearing on a motion to suppress photographic identifications of the defendant warranted the judge's finding that the array of photographs shown to the witnesses was not impermissibly suggestive. [351-355]

There was no error in the denial of the defendant's motion to suppress identifications of the defendant made at a probable cause hearing where the defendant was represented by counsel at the hearing and there was no showing that counsel had sought to alter the identification procedures. [355-359]

INDICTMENTS found and returned in the Superior Court on November 13, 1975.

The cases were tried before *Roy, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Kevin M. Keating (John F. Toomey, Jr.,* with him) for the defendant.

---

[9] See 5 U.S.C. § 8103 (1970 & Supp. IV 1974) as to medical expenses.

*Philip T. Beauchesne,* Assistant District Attorney, for the Commonwealth.

LIACOS, J.   The defendant was indicted for murder in the first degree, armed robbery (two indictments), and the unlawful carrying of a handgun. After a jury trial, the defendant was found guilty of murder in the second degree and guilty of the three remaining charges. He was sentenced to life imprisonment on the murder charge as well as to three lesser terms on the other charges to run concurrently with the life sentence. We consider the defendant's appeal pursuant to G. L. c. 278, §§ 33A-33G.

The principal issues in this case involve the identification of the defendant by three witnesses. The defendant argues first that the trial judge erred in denying a motion to suppress identification evidence, and second that the judge erred in denying the defendant's requests for jury instructions on the issue of identification. We consider the issues in that order after relating the material facts. We conclude that there was no error and that the judgments of conviction are to be affirmed.

The murder occurred about 10 P.M. on August 30, 1975, at the Golden Cafe in Roxbury. A patron in the café, one Alma Condo, was seated with an employee of the café, Rita McLellan, and her daughter, Deborah McLellan. Also present was the owner and operator of the cafe, Albert A. Dunn. Two men entered the café, announced a holdup, and jumped over the bar to confront Dunn. One of the men was holding a gun. After a few words were exchanged with Dunn, the robber with the gun put it to Dunn's head and fired. Dunn died as a result of a gunshot wound to his brain. The two men took some money from the cash register and from Rita McLellan's handbag and fled. Rita McLellan called the police, who arrived at the scene within minutes. Although there is some dispute as to whether Alma Condo and Deborah McLellan gave a description of the robbers at that time, it appears that Rita McLellan gave the police a brief description of them.

Other relevant facts involve the process of identification that led to the arrest of the defendant. For our purposes, it will be helpful to divide the identification process into three stages: (1) pre-arrest identification by photographs; (2) identification at a pre-indictment probable cause hearing; and (3) identification at trial. Each stage will be discussed separately.

1. *Pre-arrest Identification by Photographs.*

a. *Rita McLellan.* Two police detectives visited Mrs. McLellan at her home on September 17, 1975, and handed her thirteen photographs. She picked out the photograph of the defendant as the man with the gun. There was no significant conversation with the police either before or after the identification.

b. *Deborah McLellan.* On or shortly after September 17, 1975, Deborah McLellan was called to the police station and was asked to look at the same photographs. Prior to looking at the photographs, she was questioned regarding the events at the café. She became highly excited, or hysterical, much as she had been on the night of the murder. According to the police, she was unable to select any of the photographs due to her excited condition. Deborah testified, however, both at the hearing on the motion to suppress and at the trial, that she did pick out the defendant's photograph from the group of thirteen and had identified it as being a photograph of one of the robbers.

c. *Alma Condo.* The police detectives visited Mrs. Condo in her home sometime in September and showed her the same thirteen photographs. She was not able to make an identification. Subsequently, Mrs. Condo came to the police station on her own initiative, complaining that she was being followed and that she was afraid. The police presented to her the same thirteen photographs, from which, according to the police, she picked the photograph of the defendant as the man who had been following her. Mrs. Condo's testimony on this point was somewhat confused, making it unclear whether she remembered identifying the defend-

ant's picture as being that of one of the robbers or merely that of the man who had been following her.

d. *The judge's findings.* With regard to the photographic displays presented to Rita McLellan and Alma Condo, the judge "accept[ed] as truthful and accurate" the testimony of the police detectives at the voir dire hearing on the motion to suppress and formally adopted that testimony as his findings of fact. That is, the judge adopted the police testimony that Rita McLellan picked out the defendant's picture from the group of thirteen as being that of one of the robbers, and that Alma Condo picked out the same picture as being that of the man who had been following her. The judge added that "[i]nsofar as the photographic identification is concerned, there's been no showing whatsoever, in my view, that the Commonwealth or the police authorities did anything that was in any way suggestive which would have tainted that photographic identification process." He therefore denied the defendant's motion to suppress photographic identification with regard to Rita McLellan and Alma Condo. He also denied that motion with regard to Deborah McLellan after a voir dire, but without making explicit findings of fact.

e. *The assignment of error.* The defendant assigns as error the judge's denial of the motion to suppress the photographic identification by the three witnesses. The defendant declares in a general, and rather unhelpful, way that the photographic identification was "improper, unduly suggestive and prejudicial." Compare G. L. c. 278, § 33D, as amended by St. 1974, c. 458, § 2: "The specific grounds upon which any claim of error is based shall be set forth in a concise form." In his brief, the defendant contends that the thirteen photographs "did not constitute a fair mix of photographs based upon the descriptions which the police had obtained prior to selecting photographs." The defendant thus challenges the particular array of thirteen photographs presented to the witnesses rather than challenging the manner in which the photographs were presented by the police.

The judge did not benefit from the focus provided in the defendant's brief. The failure of the judge to make a specific reference in his findings to the propriety of the particular array of photographs is thus attributable in substantial measure to the defendant's failure clearly to present the issue. However, a reading of the transcript clearly reveals that the questioning of the witnesses by counsel and by the judge sufficiently illuminated the possible "suggestive" aspects of the photographic identification procedures.[1] The judge explicitly found, after hearing extensive testimony on all the aspects of the photographic identifications by the three witnesses,[2] that there was "no showing whatsoever . . . that the Commonwealth or the police authorities did anything that was in any way suggestive . . . . As a matter of fact, as I view the situation, those identifications occurred

---

[1] *Commonwealth* v. *Mobley*, 369 Mass. 892, 896 (1976), provides five criteria to aid in the analysis of such procedures. The judge should consider: "(1) the extent of the witness's opportunity to view the robber; (2) the general description given by the witness of the robber; (3) the absence of any error in either failing to identify the defendant as the robber or in identifying some other person as the robber; (4) the lack of evidence that the police had made any suggestions to the witness concerning identification of the defendant; and (5) the relatively short period of time which elapsed between the commission of the crime and the identification of the photographs" (footnote omitted). See *United States* v. *Wade*, 388 U.S. 218, 241 (1967), where several of these criteria were suggested as aids in determining whether an in-court identification was impermissibly tainted by a prior lineup identification conducted in violation of the defendant's right to counsel. See also *Commonwealth* v. *Botelho*, 369 Mass. 860, 869 (1976) (similar criteria applied to question whether out-of-court identifications were independent of taint from prior suggestive confrontation).

[2] The illness of one of the witnesses, Deborah McLellan, resulted in a one-day postponement of the judge's ruling on the motion to suppress as it related to that witness. On hearing the testimony of Deborah McLellan, the judge denied the motion to suppress as it related to her, but without making any findings. However, the sequence of events, as disclosed in the transcript, indicates that the judge's explicit findings with regard to the suggestiveness of the photographic identification procedures were intended to apply to Deborah McLellan as well as to the first two witnesses to testify at the suppression hearing. We also note that the defendant has not based an assignment of error on the absence of a finding with regard to the photographic identification by Deborah McLellan. See *Commonwealth* v. *Flaherty*, 1 Mass. App. Ct. 282, 287 (1973).

prior to the arrest of the defendant Jones, and there is nothing to indicate that the police zeroed in on Jones particularly."

Where subsidiary findings of fact have been made by a trial judge on a motion to suppress, they will be accepted by an appellate court absent clear error. *Commonwealth* v. *White*, 374 Mass. 132, 137 (1977). *Commonwealth* v. *Sires*, 370 Mass. 541, 544 n.1 (1976) (appellate court will accept judge's resolution of conflicting testimony and will not disturb subsidiary findings if warranted by the evidence). *Commonwealth* v. *Hosey*, 368 Mass. 571, 574-575 n.1 (1975). The judge's ultimate legal conclusion in the instant case — that the photographic identification procedures were not constitutionally invalid — is entitled to substantial deference by this court. *White, supra. Commonwealth* v. *Botelho*, 369 Mass. 860, 868 (1976). However, such an ultimate legal conclusion, to be drawn from the facts developed at the suppression hearing, is a matter for review by this court, particularly where the conclusion is of constitutional dimensions. *Sires, supra. Hosey, supra.*

With this scope of review in mind, we consider the defendant's contention that the photographic identification procedures were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Commonwealth* v. *Mobley*, 369 Mass. 892, 895 (1976), quoting from *Simmons* v. *United States*, 390 U.S. 377, 384 (1968). The defendant, in his brief, bases this contention solely on the ground that the array of thirteen photographs — consisting of the defendant's picture and those of twelve other young black males — was inherently suggestive because it did not represent a fair mix of individuals who were reasonably like the defendant in appearance. See *Commonwealth* v. *Gilday*, 367 Mass. 474, 495 (1975). The only support argued for this position is that some of the photographs were of light-complexioned black males while others were of dark-complexioned black males, and that this selection did not accord with the description given the police by the witnesses. This argument is devoid of merit.

Having examined the thirteen photographs, as did the judge, we believe the judge's finding of lack of impermissible suggestion was clearly correct. The photographs are of men of varying degrees of lightness or darkness of complexion and there is nothing to distinguish or draw attention to the defendant. The three witnesses gave the police no clear indication that the robbers were either very light or very dark in complexion. It therefore was not unreasonable for the police to have included men of varying complexions, and the array that was selected was not likely to draw the three witnesses toward selection of the defendant's photograph. Any weaknesses in the photographic identification process, such as may have been disclosed during the suppression hearing, did not rise to constitutional level and therefore were properly left for consideration by the jury relevant to the weight of the identifications. See *Commonwealth* v. *Funderberg*, 374 Mass. 577, 581-582 (1978); *Commonwealth* v. *Bumpus*, 362 Mass. 672, 678-679 (1972), judgment vacated and remanded on other grounds, 411 U.S. 945 (1973), aff'd on rehearing, 365 Mass. 66 (1974).

2. *Identification at the Probable Cause Hearing.*

a. *Rita McLellan.* On October 24, 1975, a hearing was held in the Municipal Court of the Roxbury District to determine if there was probable cause to hold the defendant for trial in the Superior Court. Rita McLellan was seated in the court room when the defendant entered and took his place, alone, in the prisoner's dock. Mrs. McLellan was told by the police that they had arrested a man for the crime, and was asked whether she could identify that man as one of the robbers. She indicated that the man in the dock, the defendant, was one of the robbers.

b. *Deborah McLellan.* Deborah McLellan was also present at the probable cause hearing and observed the defendant standing in the dock. She heard her mother testify that the defendant was one of the robbers but she did not testify herself. Deborah McLellan left the court room in an excited, or hysterical, condition and told the police that the defendant was one of the robbers.

c. *Alma Condo*. Mrs. Condo was seated in the court room and observed the defendant in the dock. She identified him as one of the robbers. Mrs. Condo testified at the suppression hearing that, just prior to her arrival at the probable cause hearing, the police had told her that she was going to be present at a trial and that the police had apprehended one of the men who had committed the robbery.

d. *The judge's findings*. The judge found nothing improper or suggestive in the identification of the defendant at the probable cause hearing by Rita McLellan or Alma Condo,[3] and therefore denied the defendant's motion to suppress as it related to those two witnesses. The judge subsequently denied, without comment, the motion to suppress as it related to Deborah McLellan.

e. *The assignment of error*. The defendant assigns as error the judge's denial of the motion to suppress the identification at the probable cause hearing, declaring that "the identification procedures were improper, unduly suggestive and prejudicial to defendant." In his affidavit in support of the motion to suppress, the defendant had called the judge's attention to the fact that he was alone in the prisoner's dock at the time of the identifications.

All that we have said regarding the particular responsibilities and prerogatives of the trial judge in making findings on a motion to suppress photographic identifications, see part (1) (e), *supra*, applies equally to the context of a motion to suppress identifications at a probable cause hearing.

---

[3] The judge's findings, or comments, regarding the motion to suppress based on the probable cause identification are as follows: "In respect of the proceedings in the probable cause hearing in the lower court, those are not contrived situations, and this was not a contrived situation in which the police were attempting to buttress an identification. As I have mentioned earlier, of necessity there will be these viewings in the course of probable cause hearings, and I find nothing improper and suggestive in what was done in this case, and therefore, insofar as any in-court identification, as it relates to the probable cause hearing relating to Mrs. Condo and Mrs. McLellan, I'm going to deny the defendant's motion to suppress and save his exception."

The defendant has characterized the identification procedure at the probable cause hearing as a "showup" or one-on-one confrontation, as distinguished from a "lineup" in which the defendant is one of several people presented simultaneously to a witness.

It is the Commonwealth's position that an identification which takes place in a court room is different in kind than other forms of showups, and that it is to be expected that in-court showups will be suggestive. By this view, the Commonwealth may have intended to suggest that due process identification considerations are not applicable to the instant probable cause hearing in which the defendant was identified by the three witnesses. A decision of the Appeals Court, cited by the Commonwealth, provides support for such an argument. "[T]he . . . identification at the probable cause hearing was an in-court identification, and testimony concerning it was no more subject to exclusion for impermissible suggestiveness than an identification at the later trial. 'Undoubtedly any in-court identification confrontation, whether at a preliminary hearing or at trial, . . . carries with it the stigma of the inevitable suggestion that the state thinks the defendant has committed the crime.' *Baker* v. *Hocker*, 496 F.2d 615, 617 (9th Cir. 1974)." *Commonwealth* v. *Wheeler*, 3 Mass. App. Ct. 387, 390 (1975). Cf. *Commonwealth* v. *Evans*, 5 Mass. App. Ct. 844 (1977).

The importance and sensitivity of probable cause showups were recently emphasized by the Supreme Court in the case of *Moore* v. *Illinois*, 434 U.S. 220 (1977). In *Moore*, the court held that a defendant's Sixth and Fourteenth Amendment rights were violated by a corporeal identification conducted at a pre-indictment probable cause hearing in the absence of counsel. Although *Moore* was decided on right to counsel grounds, it also speaks to the due process fairness of probable cause showups. The Court first noted that "a one-on-one confrontation generally is thought to present greater risks of mistaken identification than a lineup." *Id.* at 229. The Court then added: "If the [Court of Appeals] believed that petitioner did not have a right to counsel at this identi-

fication procedure because it was conducted in the course of a judicial proceeding, we do not agree. The reasons supporting *Wade's* [*United States* v. *Wade,* 388 U.S. 218 (1967)] holding that a corporeal identification is a critical stage of a criminal prosecution for Sixth Amendment purposes apply with equal force to this identification. It is difficult to imagine a more suggestive manner in which to present a suspect to a witness for their critical first confrontation than was employed in this case. The victim, who had seen her assailant for only 10 to 15 seconds, was asked to make her identification after she was told that she was going to view a suspect, after she was told his name and heard it called as he was led before the bench, and after she heard the prosecutor recite the evidence believed to implicate petitioner. Had petitioner been represented by counsel, some or all of this suggestiveness could have been avoided" (footnote omitted). *Id.* at 229-230.

In this case, the record shows that the defendant was represented by counsel at the probable cause hearing. The defendant failed to call such counsel to show any impropriety in the procedures in the Municipal Court, nor has he claimed any in his brief.[4] In *Commonwealth* v. *Jones,* 362 Mass. 497, 500-501 (1972), we said, "While there is clearly an element of suggestion in the relative isolation of the defendant at the defence table or in the dock [citation omitted], counsel is present to 'ferret out [any] suggestive influences' which he perceives in in-court identification procedures. Cf. *United States* v. *Wade,* 388 U.S. 218, 234-237 [1967]. . . . If counsel moves for an in-court lineup or to seat the defendant in the court room audience, we think it is within the sound discretion of the trial judge whether to grant the request." See, e.g., *Commonwealth* v. *Pearsall,* 370 Mass. 413, 415-416 (1976); *Commonwealth* v. *Core,*

---

[4] The Supreme Court commented in a footnote in *Moore* accompanying the quoted passage that, had the petitioner been represented, counsel could have requested that a lineup be arranged, that the petitioner be seated in the audience, or that the victim be excused from the court room while the charges were read and the evidence recited. 434 U.S. at 230 n.5.

370 Mass. 369, 372-373 (1976); *Commonwealth* v. *Bumpus*, 362 Mass. 672, 680 (1972).

The instant case involves crucial and sensitive initial face-to-face encounters between the witnesses to the crime and the defendant in the context not of a trial but of a hearing to determine probable cause. However, the defendant failed to show that counsel at the probable cause hearing sought to alter the identification procedures therein. Had such a showing been made, and had it been further shown that a request of the type outlined in Jones improperly had been denied, a different case from that now before us might have been presented. There was no error in the judge's denial of the motion to suppress the probable cause hearing identifications.

3. *Identification at Trial.*

All three witnesses identified the defendant at trial as one of the robbers. In light of our view that the judge correctly found no violation of any constitutional right, we need not reach the issue of whether such in-court identifications were the product of, or "tainted" by, prior impermissibly suggestive confrontations, or whether the trial identifications were grounded on independent observations. Cf. *Botelho*, 369 Mass. 860, 866 (1976). There was no error on this account.

4. *Requests for Jury Instructions.*

The defendant assigns as error the judge's refusal to charge the jury on the issue of identification in conformance with certain instructions requested by the defendant. Having reviewed the instructions given by the judge, as well as the requested instructions, we are of the opinion that the judge's charge provided accurate and fair coverage of the issue and afforded the jury appropriate guidelines for decision. See *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 539-540 (1971).

5. *Conclusion.*

Pursuant to G. L. c. 278, § 33E, we have reviewed the entire case for consideration of the law and the evidence. We find no reason to order a new trial or to direct a verdict of a lesser degree of guilt.

*Judgments affirmed.*