COMMONWEALTH *vs.* ALBERT J. CINCOTTA.

Norfolk. November 13, 1978. — January 19, 1979.

Present: HALE, C.J., KEVILLE, & GRANT, JJ.

*Identification. Practice, Criminal,* Assistance of counsel, Directed verdict, New trial. *Robbery.*

A pretrial identification procedure whereby the police showed a witness to a bank robbery an array of ten photographs, from which the witness selected a photograph as that of the robber, and then showed the same array to a second witness, who was aware that the first witness had selected a photograph, was not impermissibly suggestive. [817-818]

At a hearing on a defendant's motion to suppress identifications of him made while he was seated at the prisoner's bench at his probable cause hearing, there was sufficient evidence to warrant a finding that the identifications were reliable under the totality of the circumstances even though the circumstances were somewhat suggestive. [818-819]

Pretrial identifications of a defendant while he was seated at the prisoner's bench at his probable cause hearing were not made in violation of his right to counsel where the defendant's counsel was

present at the hearing and should have been aware that prosecution witnesses would also be present. [819-820]

At the trial of a defendant charged with armed robbery while having artificially distorted features, there was sufficient evidence, including evidence that the robber used a black substance to obscure his facial features, to warrant denial of the defendant's motion for a directed verdict. [820-821]

INDICTMENT found and returned in the Superior Court on August 5, 1976.

A motion to suppress evidence was heard by *Brogna*, J., and the case was tried before *Bonin*, C.J.

*P. J. Piscitelli* for the defendant.

*Charles J. Hely*, Assistant District Attorney, for the Commonwealth.

HALE, C.J. The defendant appeals (G. L. c. 278, §§ 33A-33G) from his conviction of armed robbery while having artificially distorted features (G. L. c. 265, § 17). He assigns as error the motion judge's denial of his motion to suppress certain identification testimony. He also assigns error in the trial judge's refusal to direct a verdict and his denial of a motion for a new trial.

On July 19, 1976, the Quincy branch of the First Federal Savings and Loan Association of Boston was robbed by a single male armed with a handgun who fled the bank with $4,004.48. Present in the bank at the time of the robbery were two employees, Helen Sands, the branch manager, and Cindy Carmusin, a teller. The admissibility of certain parts of their testimony as to the robber's identity was challenged in a motion to suppress and is in question on this appeal. The motion judge held a lengthy hearing on the motion, made findings of fact that were well supported by the evidence, and denied the motion. We summarize those findings, along with other relevant facts which could have been found based on the evidence adduced at the hearing.

The robber entered the bank at about 10:40 A.M., jumped on the counter and pointed a gun at Carmusin, telling her to lie on the floor. She complied, but only after

observing his face for several seconds. Sands then came out of the ladies' room located in the rear of the bank and was confronted by the robber. She had several seconds to observe his face before he forced her to lie on the floor. Both Sands and Carmusin saw the robber's face twice more for a few seconds each during the course of the robbery. The bank was well lighted, and both saw him from close range. The trial judge found that these events gave both victims ample opportunity to observe the robber.

Both women gave relatively detailed descriptions of the robber to the detectives who arrived at the scene soon after the robbery. Sands was able to assist the officers in making up a composite rendition of the robber's face by the use of an "Ident-A-Kit" on the day of the robbery, but Carmusin was not. Later on the day of the robbery Sands viewed about 140 photographs at the police station but was unable to pick any one as being that of the robber. Cincotta's photograph was not among that array.

Three or four days later the police came to the bank with ten photographs. They showed them first to Sands at her desk while Carmusin remained behind the teller's counter about seven feet away. Sands picked out Cincotta's photograph after about ten minutes and said that he was the robber. The police then took the photographs from Sands and gave them to Carmusin. She examined them for five or ten minutes and picked out Cincotta's photograph as resembling the robber but said that she was not sure and asked to see him in person. The police said nothing to either one after asking them to look at the pictures. Carmusin was aware that Sands had picked out a picture but did not know which one.

Both women were subpoenaed to testify at Cincotta's probable cause hearing on July 29, 1976. They sat in the front row of the courtroom with two police officers and Assistant District Attorney Carhart in the following order: Carmusin, Mr. Carhart, a police officer, Sands, and a second police officer. The defendant, represented by coun-

sel, was dressed in civilian clothes and was seated on the prisoner's bench to the right of the court without any uniformed officer in his immediate vicinity. All were speaking in whispers, so Sands and Carmusin could not hear each other speaking. As soon as she saw Cincotta, Sands leaned forward and told one of the officers, "That's him." Sands had not been asked to try to identify the robber. At about the same time, Carmusin turned to the person next to her, Mr. Carhart, and identified Cincotta as the man who had robbed the bank. The Commonwealth stipulated that Mr. Carhart had asked Carmusin before the proceedings began to look around the court to see if she could recognize anyone. Carmusin did not remember that statement, and, in fact, was unaware of the significance of the seating arrangement or of the fact that the accused had to be present at the hearing. Both women left the courtroom soon after the identification, apparently in response to a defense motion to sequester witnesses. Only Sands testified at the hearing and identified Cincotta as the robber.

At trial both Sands and Carmusin testified to the identifications they had made of Cincotta's photograph at the bank and of Cincotta himself in the courtroom before the start of the probable cause hearing. They also pointed him out at trial.

1. *Due Process: Suggestivity.*

The defendant argues that the motion judge violated his due process rights by refusing to suppress testimony regarding the identifications made by Sands and Carmusin from photographs and from their views of the defendant at his probable cause hearing. He asserts that those identifications were unnecessarily suggestive, that corruptive influences outweighed any indicia of reliability, and that exclusion at trial of evidence regarding them was required. The motion judge found that Carmusin's photographic identification of Cincotta "was not impermissibly suggested," and ruled that Sands' photographic identification "was not constitutionally impermissible."

He found that their live identifications at the probable cause hearing were based on recollections of the robber's face, independent of the photographic identifications, but did not explicitly find that either of those identifications was nonsuggestive or reliable.

As evidence of those identifications was admitted at trial, we proceed to address these issues even though they were not examined by the judge below.[1] In the course of this examination we shall defer to the judge's subsidiary findings in the absence of clear error. *Commonwealth* v. *Moynihan*, 376 Mass. 468, 474-475 (1978). "Our duty as an appellate tribunal . . . is not to substitute one set of findings for another but is to determine whether the judge's findings were supported by clear and convincing evidence." *Commonwealth* v. *Cofield*, 1 Mass. App. Ct. 660, 667 (1974).[2]

Reliability is the key to the admission of testimony regarding pretrial identifications of a defendant. Testimony as to pretrial identifications based on procedures that are so impermissibly suggestive as to give rise to a "substantial likelihood of misidentification," *Neil* v. *Biggers*, 409 U.S. 188, 201 (1972), should be excluded at trial because it would be violative of a defendant's due process rights. See *Simmons* v. *United States*, 390 U.S. 377, 384 (1968); *Commonwealth* v. *Wheeler*, 3 Mass. App. Ct. 387, 391-392 (1975). However, even confrontations that were unnecessarily suggestive can be the subject of identification testimony, as long as the circumstances of the iden-

---

[1] We reiterate our statement in *Commonwealth* v. *Gordon, ante* 230, 240 (1978), that findings of fact emphasizing the factors and issues set out in *Neil* v. *Biggers*, 409 U.S. 188 (1972), and *Manson* v. *Brathwaite*, 432 U.S. 98 (1977), are highly desirable and that we will not hesitate to call for further findings when we deem them necessary. Such findings greatly facilitate our review and should be made by the trial judge. See *Commonwealth* v. *Mobley*, 369 Mass. 892, 895-896 (1976); *Commonwealth* v. *Moynihan*, 376 Mass. 468, 475 (1978).

[2] Ultimate findings of fact are subject to our review, but we will grant substantial deference to them when they exist. *Commonwealth* v. *Jones*, 375 Mass. 349, 354 (1978).

tification satisfy certain indicia of reliability. *Neil* v. *Biggers*, 409 U.S. at 199. *Manson* v. *Brathwaite*, 432 U.S. 98, 114 (1977). *Commonwealth* v. *Mobley*, 369 Mass. 892, 895-896 (1976). *Commonwealth* v. *Jones*, 375 Mass. 349, 353–355 (1978). *Commonwealth* v. *Gordon, ante* 230, 236, 238 (1978). Cf. *Stovall* v. *Denno*, 388 U.S. 293 (1967). Testimony as to unsuggestive confrontations, of course, does not raise the spectre of a due process violation and can be admitted without a judicial determination that they are reliable. See *Commonwealth* v. *Jones*, 375 Mass. at 355.

The appropriate factors to be considered in the assessment of the reliability of a particular pretrial identification under the totality of the circumstances include: "[1] the opportunity of the witness to view the criminal at the time of the crime, [2]the witness' degree of attention, [3] the accuracy of his prior description of the criminal, [4] the level of certainty demonstrated at the confrontation, and [5] the time between the crime and the confrontation. Against those factors is to be weighed the corrupting effect of the suggestive identification itself." *Commonwealth* v. *Gordon, supra* at 236, quoting from *Manson* v. *Brathwaite*, 432 U.S. at 114. Any weaknesses in a reliable identification which are not of constitutional magnitude are "properly left for consideration by the jury relevant to the weight of the identification," *Commonwealth* v. *Jones*, 375 Mass. at 355. See *Commonwealth* v. *Moynihan*, 376 Mass. at 476; *Commonwealth* v. *Martin, post* 858 (1978).

a. *Photographic identifications.* The defendant's allegations of suggestivity in the photographic identifications are directed both to the array of ten photographs shown and the procedures employed at the showing. We have examined the array and find that it was unsuggestive and unlikely to cause either witness to select the defendant's photograph.

The defendant points to no procedure that the police employed, and we have found none, that may have influenced Sands in her selection of Cincotta's photograph from the group given to her.

When Carmusin selected Cincotta's photograph, she was aware that Sands had already chosen a photograph as that of the robber although she did not know which one Sands had selected. Even if this procedure was marginally suggestive, it fell short of being impermissibly so. Compare *Commonwealth* v. *Moynihan,* 376 Mass. at 476; *Commonwealth* v. *Cofield,* 1 Mass. App. Ct. at 667; *United States* v. *Eatherton,* 519 F.2d 603, 609 (1st Cir.), cert. denied, 423 U.S. 987 (1975). Our examination of the circumstances of this identification reveals no "corrupting effect" attributable to this procedure, and we need not otherwise inquire as to the reliability of this identification in light of the factors stated in the *Manson* case. See *Commonwealth* v. *Gordon, supra* at 236.

b. *Live identifications at the probable cause hearing.* An identification made of a defendant while he is seated at the prisoner's bench at his probable cause hearing is subject to due process requirements as to the suggestivity of the confrontation, even though it is essentially an in-court confrontation. *Commonwealth* v. *Mobley,* 369 Mass. at 895. *Commonwealth* v. *Jones,* 375 Mass. at 356–359. Cf. *Moore* v. *Illinois,* 434 U.S. 220, 229-230 (1977). But see *Commonwealth* v. *Wheeler,* 3 Mass. App. Ct. at 390-391. Having examined the circumstances of the identifications at the probable cause hearing in light of the factors set forth in the *Biggers* case and restated in the *Manson* case, we hold that both identifications were reliable under the totality of the circumstances even though those circumstances were somewhat suggestive. See *Commonwealth* v. *Jones,* 362 Mass. 497, 500-501 (1972). Contrast *Moore* v. *Illinois,* 434 U.S. at 229-230.

The motion judge found that both women had ample opportunities to observe the robber during the robbery, and we consider that finding to be supported by the evidence. The lighting in the bank was good. Both witnesses looked directly at the robber's face from very close range. The time of observation was short, but it was not so brief as to deprive them of the opportunity to gain impressions

of the robber's features even though his face and hair were coated with a black substance. See, e.g., *Commonwealth* v. *Geraway*, 355 Mass. 433, cert. denied, 396 U.S. 911 (1969); *Commonwealth* v. *Roberts*, 362 Mass. 357, 366-367 (1972). Compare *Commonwealth* v. *Wheeler*, 3 Mass. App. Ct. 387, 392 (1975).

Next to the existence of a good opportunity to observe the criminal, the fact that the observation occurred "under circumstances likely to fix in the mind of the witness the identity of the person confronted," *Commonwealth* v. *Kennedy*, 3 Mass. App. Ct. 218, 221 n.4 (1975), quoting from *Commonwealth* v. *Frank*, 357 Mass. 250, 254 (1970), is the most important factor in an assessment of reliability. The circumstances of this robbery attracted the attention of the witnesses to the robber and made it likely that his image would remain fixed in their memories. The descriptions both witnesses gave to the police a short time after the robbery were generally consistent with the appearance of the defendant when apprehended. The minor discrepancies that existed were not critical. *Commonwealth* v. *Gordon, supra* at 238. The man they identified at the hearing was the same man whose photograph they had selected at the prior photographic identifications. They were certain and quick in pointing out the defendant at the hearing, and neither was aware of prompting by the police. *Commonwealth* v. *Alves, ante* 572, 582 (1978). The confrontation occurred only a week after the robbery when their memories were fresh.

We think any "corrupting effect" of the confrontation on the witnesses was slight. The identifications were nearly simultaneous, were spontaneous, and each was made, as the judge justifiably found, outside the hearing of the other witness. In the totality of the circumstances, the indicia of reliability far outweighed any possible corrupting effect on either identification. There was no error in admitting evidence of both identifications at trial.

2. *Right to Counsel.*

The defendant claims that testimony as to the identifi-

cations made at the probable cause hearing should have been suppressed because they were done in violation of his right to counsel. He concedes that he was represented by an attorney at the probable cause hearing but maintains that the Commonwealth's failure to alert defense counsel that identification witnesses might be present at that time amounted to a denial of the effective assistance of counsel. We disagree.

The Sixth Amendment guarantees a defendant the right to counsel at preliminary hearings after the initiation of adversary criminal judicial proceedings. *Coleman* v. *Alabama*, 399 U.S. 1, 9-10 (1970). *Moore* v. *Illinois,* 434 U.S. at 229. Testimony as to a pretrial identification made in violation of the right to counsel must be excluded from evidence at trial. *Gilbert* v. *California*, 388 U.S. 263 (1967). *Moore* v. *Illinois, supra.*The procedures involved here, however, did not amount to a denial of the assistance of counsel. Counsel was present at the hearing. In the circumstances he should have been aware that prosecution witnesses would be on hand, ready to testify to matters sufficient to warrant a finding of probable cause. This case is distinguishable from *Commonwealth* v. *Balukonis*, 357 Mass. 721, 724 & n.3 (1970), and *Martin* v. *Donnelly*, 391 F. Supp. 1241 (D. Mass. 1974). Those cases involved identifications made under certain circumstances at a trial on a different charge and at an arraignment on the same charge in which counsel was not likely to expect the presence of potential identification witnesses and hence was not in a position to take remedial measures.

3. *Other Issues.*

a. The trial judge properly denied the defendant's motion for a directed verdict. "The sole question raised by [a motion for directed verdict] . . . is whether, when the motion [was] filed, 'there was sufficient evidence of the defendant's guilt to warrant the submission of the case [ ] to a jury.' " *Commonwealth* v. *Sandler*, 368 Mass. 729, 740 (1975), quoting from *Commonwealth* v. *Altenhaus*, 317

Mass. 270, 271 (1944). *Commonwealth* v. *Shagoury, ante* 584, 598 (1978). After considering all the evidence here in the light most favorable to the Commonwealth we conclude that it was sufficient to warrant the verdict returned by the jury. We hold in particular that the evidence of the robber's use of a black substance to obscure his facial features was sufficient to permit the jury to find that the robbery was done with distorted facial features. See *Commonwealth* v. *Flynn,* 362 Mass. 455, 478 (1972).

b. Finally, the defendant argues that the trial judge erred in denying his motion for a new trial. The motion raised no question which has not already been discussed in this opinion. The granting of this new trial was within the broad discretion of the judge (*Commonwealth* v. *Gallo, ante* 650, 651 [1978]), and there was no abuse of that discretion. See *Commonwealth* v. *Paquette, post* 940 (1978).

*Judgment affirmed.*