COMMONWEALTH vs. JEROME A. NAPOLITANO.

Suffolk.    April 4, 1979. — August 2, 1979.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

*Identification. Evidence*, Judicial discretion.

There was no merit to a criminal defendant's contention that an array
of forty-four photographs shown to witnesses by the police was
impermissibly suggestive because most of the pictures did not
resemble him, nor did the record support the defendant's conten-
tion that the police prompted the witnesses.  [600-603]

Identification of a defendant by three witnesses at the defendant's
probable cause hearing was not impermissibly suggestive merely
because the defendant was seated in the prisoner's dock, isolated
from others in the court room, and a finding that the identifications
had a basis independent of the probable cause hearing was warrant-
ed by the evidence.  [603-605]

Identification of a defendant by a witness in a court room where the
defendant was being arraigned on unrelated charges, while not an
approved procedure, was not constitutionally impermissible, even
though neither the defendant nor his counsel had been informed
that he was being identified in connection with another crime,
where the defendant was not completely isolated in the room and
where investigation of the defendant in connection with the crime
was still in its initial stages.  [605-608]

At a criminal trial, there was no error in the judge's charge with
respect to identification testimony.  [608-610]

At a murder trial, the judge did not err in admitting evidence that the
defendant owned "motorcycle-type" clothing and that he had visit-
ed a bar in a certain area, where the issue of clothing was relevant
to the identity of the assailant and evidence of his visit to the bar
went to the credibility of a defense witness who claimed the defend-
ant never frequented bars in that area.  [610-611]

INDICTMENTS found and returned in the Superior Court
on June 8, 1977.

A pretrial motion to suppress evidence was heard by
*Brogna*, J., and the cases were tried before him.

*Monroe L. Inker (John E. DeVito* with him) for the defendant.

*Michael J. Traft,* Assistant District Attorney (*Alice Hanlon* with him) for the Commonwealth.

ABRAMS, J. Jerome Napolitano appeals from two convictions of murder in the first degree.[1] See G. L. c. 278, §§ 33A-33G. Napolitano contends that the trial judge erred in (1) the denial of his motion to suppress identification testimony, (2) the charge to the jury concerning identification testimony, and (3) the admission of evidence.[2] We find no error and affirm the convictions. We also decline to exercise our power under G. L. c. 278, § 33E, to direct the entry of a verdict of a lesser degree of guilt.

1. *The motion to suppress.* On September 24, 1976, two men, Hugh McGuire and Thomas Willett, were shot by an assailant after a brawl near the Dummy Club in Brighton. Three witnesses observed the killings from different vantage points. Each of the three witnesses identified Napolitano as the assailant. Napolitano claims that the three identifications of him are constitutionally infirm and that it was error for the trial judge to admit the pretrial and in-court identifications by the three witnesses[3] at his trial. We find no error in the denial of Napolitano's motion.

A. *The photographic identification.* The three witnesses for the Commonwealth selected Napolitano's picture from an array of forty-four photographs. Napolitano

---

[1] Napolitano was sentenced to two concurrent life sentences at the Massachusetts Correctional Institution at Walpole, to be served from and after a three to five year sentence which he was already serving for an unrelated armed robbery.

[2] Assignments of error not briefed are deemed waived. *Commonwealth* v. *Amazeen,* 375 Mass. 73, 74 n.1 (1978).

[3] At trial two other eyewitnesses contradicted the identification testimony of the three who testified at the hearing. The testimony of the two eyewitnesses goes to the weight of the other three identifications, and not to whether they should have been suppressed. See *Neil* v. *Biggers,* 409 U.S. 188, 201 n.8 (1972).

argues that the array was impermissibly suggestive because most of the pictures did not resemble him and because the police prompted the witnesses. The record does not support Napolitano's claims.

We summarize the evidence surrounding the photographic identifications. On September 3, 1976, Kenneth Weeks was the victim of an assault and battery by a group of men which included the two homicide victims. The assailant, later identified as Napolitano, came over to the men beating Weeks. The assailant pushed Willett and McGuire away from Weeks and then shot them. Weeks observed the assailant for approximately one minute in an area where there were a "couple" of street lights.

Weeks furnished the police with a detailed description of the man who had shot Willett and McGuire, including the man's height, weight, build, age, hair length, and clothing. He also told police that the assailant had a beard and wore glasses.

From Weeks's description a police artist drew up some composite pictures but none of them satisfied Weeks. The police showed Weeks two separate photographic arrays but Weeks made no identification. On February 1, 1977, Weeks was shown a third array consisting of forty-four photographs. Weeks selected Napolitano's picture and said that he was "70 percent sure" Napolitano was the assailant, but that he wanted to see Napolitano in person because the picture did not portray the man's body.

Cory Bush viewed the assailant for four to six minutes from her apartment, 150 to 200 feet from the killings. Bush, who has twenty-twenty vision, gave the police a description of the assailant by height, weight, age and build. She also described the gunman's clothing and said that he had a "scruffy beard."

In March of 1977, the police brought Bush the array of forty-four photographs and asked her "to look through the pictures and see if there's anyone you recognize." Bush eliminated many of the pictures because they were

of thin men. She picked out the defendant's picture in one minute.

John MacKenzie saw the shootings from a distance of approximately four car lenghts. On the night of the slayings he had consumed twelve beers and was "feeling no pain."[4] At some time after Weeks selected the defendant's photograph, MacKenzie was asked to come to police headquarters and look at some photographs. Prior to looking at the array of forty-four pictures, MacKenzie was told "to look through them to see if the person is in there." MacKenzie picked out Napolitano's picture after approximately fifteen or twenty minutes. MacKenzie told the police that he had no "doubt in his mind" and that he was "positive" he had selected the assailant's photograph.

Napolitano asserts that the array was impermissibly suggestive because only three of the forty-four photographs depict heavy men with "scraggly" beards, a consistent description of the assailant. The judge found the group of forty-four photographs was "a fair cross-section." We have examined the photographs, all of which were in evidence at the hearing on the motion to suppress. Several photographs closely resemble that of Napolitano, and there is no evidence that the police in any way suggested to the witnesses which photograph was of the person under investigation.[5] Accord, *Commonwealth* v. *Clark, ante* 392, 400 (1979). We conclude that the judge was correct in finding that the array was not impermissibly suggestive. See *Simmons* v. *United States,*

---

[4] Originally, MacKenzie told the police that the assailant was wearing a green football shirt; when Weeks entered the police station wearing such a shirt, MacKenzie identified him as the assailant. The judge found that this misidentification went to the weight, not the admissibility of MacKenzie's identification.

[5] The defendant does not argue or suggest that his photograph was included in any of the earlier arrays from which Weeks had been unable to make an identification. Of course, Napolitano would have been entitled to such information. See *Commonwealth* v. *Clark, ante* 392, 396 (1974).

390 U.S. 377, 384 (1968); *Commonwealth* v. *Clark, supra*
at 396-402 (1979); *Commonwealth* v. *Moynihan,* 376 Mass.
468 (1978); *Commonwealth* v. *Jones,* 375 Mass. 349, 354-
355 (1978).

Moreover, given the fact that, at least as far as the
record discloses, the police were without a suspect, the
array was abundantly fair. Napolitano suggests that in
order for the array to be fair, it should have consisted
solely of heavy men with beards. We are unwilling to
compel the police to show to witnesses only pictures of
men with certain features which may be altered. Such a
requirement might unduly hamper police investigations
and might permit those who commit crimes to escape
detection and detention by a simple alteration of appear-
ance. Contrary to Napolitano's claim, the police were not
required to limit the array to pictures of heavy men with
"scraggly beards." We think the array in this case dis-
plays a real effort by the police to secure a fair photo-
graphic identification procedure.

Napolitano also argues that the photographic identifi-
cations were impermissibly suggestive because police
prompted the witnesses. The short answer to this conten-
tion is that the record clearly supports the judge's finding
that the identifications were not prompted in any way.[6]

B. *The identifications at the probable cause hearing.*
Bush, Weeks and MacKenzie identified Napolitano at a
probable cause hearing in the Municipal Court of the
Brighton District. Napolitano contends that all three
identifications at the probable cause hearing were imper-
missibly suggestive because they took place when he was
seated in the prisoner's dock, isolated from others in a
court room. The three witnesses testified that there were
a number of people in the court room.

---

[6] The evidence indicated that Bush was told, "We want you to look
through the pictures and see if there's anyone you recognize." Fur-
ther, MacKenzie was told, "We think we have someone here who fits
the description." The latter statement, though it should not have been
made, merely states the obvious purpose of showing the photographs
to the witness.

We recognize that a degree of suggestiveness inheres in any identification of a suspect who is isolated in a court room. Nevertheless, such isolation does not, in itself, render the identification impermissibly suggestive. *Commonwealth* v. *Jones*, 375 Mass. 349, 358-359 (1978). What is important is not so much the style of the identification procedure but whether it meets "a certain basic standard of fairness." *Commonwealth* v. *Dougan*, 377 Mass. 303, 316 (1979).

After seeing and hearing the three witnesses, the judge concluded that their identification had a basis independent of the probable cause hearing.[7] The judge's findings of fact are warranted by the evidence and amply justify his conclusions.

Moreover, Napolitano had counsel present at the probable cause hearing to "ferret out [any] suggestive influences" he perceived in the identification procedures.[8] *Commonwealth* v. *Jones*, 362 Mass. 497, 500 (1972). *Commonwealth* v. *Jones*, 375 Mass. 349, 358 (1978). See *Moore* v. *Illinois*, 434 U.S. 220, 229-230 (1977). There is nothing in this record to suggest that counsel "move[d] for an in-court lineup or to seat the defendant in the court room audience," *Commonwealth* v. *Jones*, 362 Mass. at 500, because of the suggestiveness of Napolitano's placement in the court room. Such a motion cannot be made for the first time in this court.

---

[7] Napolitano did testify at the hearing to facts which, if believed, would warrant a finding that the identification procedure at the probable cause hearing was suggestive. However, his testimony was contradicted by several prosecution witnesses, and the judge, in written findings, accepted the testimony of the prosecution witnesses.

[8] Defense counsel has several methods by which he can reduce the suggestiveness of the identification. He can request postponement of the identification until a lineup could be arranged in a less suggestive setting, or he can request that the defendant be seated in the audience during identification. *Moore* v. *Illinois*, 434 U.S. 220, 230 n.5 (1977). *Commonwealth* v. *Jones*, 375 Mass. 349, 354 (1978). If security becomes an issue the judge may require that others be seated in the dock with the defendant.

Counsel argued that the witnesses did not identify Napolitano until four months after the shootings, that two of them were influenced by alcohol while viewing the assailant, and that MacKenzie identified Weeks as the assailant on the night of the shooting. These factors bear on the weight which the trier of fact should place on their identification testimony but not on its admissibility. In sum, the identifications at the probable cause hearing were not constitutionally impermissible.[9] See *Commonwealth* v. *Jones*, 362 Mass. at 500-501; *Commonwealth* v. *Jackson*, 377 Mass. 319, 331 n.12 (1979).

C. *Identification by Weeks in Dedham.* Napolitano's argument concerning the identification by Weeks in Dedham while he was being arraigned on unrelated charges presents a more serious question. Though Napolitano was represented by counsel at that hearing, neither Napolitano nor his counsel was informed that he was being identified in connection with another crime. Thus his counsel was unable to propose procedures to reduce the suggestiveness inherent in his presence in the prisoner's dock. Further, at the time he was identified in Dedham, it was approximately four months after the crime, and Napolitano may have been wearing a shirt similar to that worn by the assailant on the night of the crime.

Despite these undeniably suggestive factors, the totality of the circumstances surrounding the identification in Dedham demonstrates that the procedure was not constitutionally infirm. Napolitano was not alone in the prisoner's dock, but was seated with two other males, at least one of whom was about the same size and age. Moreover,

---

[9] During the trial the judge instructed the jury as follows: "I can tell you that a probable cause — an identification at a probable cause hearing is probably not reliable because at that instant, or at that probable cause hearing, that is if that's the only identification, it isn't reliable, because then the focus of the whole proceedings is upon the accused." We intimate no view as to the correctness of this instruction, since its correctness was not raised or argued. See also notes 13-14, *infra*, for the judge's instructions to the jury on identification.

Commonwealth v. Napolitano.

Napolitano himself admitted that the court room was crowded and busy, and that persons were standing around the dock. Thus, Napolitano's isolation was lessened by the crowded court room. Further, the police did not direct Weeks's attention to the prisoner's dock. In these circumstances, the identification procedure was not a "one-to-one" confrontation. Compare *Commonwealth* v. *Jones, supra* at 355.

In addition, the informal identification procedure employed was justified in light of the fact that the only evidence against Napolitano at that point was Weeks's tentative photographic identification.[10] Informal identification procedures during the initial investigatory stages of the criminal process may free innocent suspects and allow the police to follow other more productive leads. See *Commonwealth* v. *Barnett*, 371 Mass. 87, 92 (1976), cert. denied, 429 U.S. 1049 (1977) (speedy showup permissible). Cf. *Simmons* v. *United States*, 390 U.S. 377, 384-385 (1968); *Commonwealth* v. *Lopes*, 362 Mass. 448, 454 (1972) (viewing of a suspect without his knowledge may save innocent but insecure suspect from engaging in inculpatory conduct). Where the investigation has not focused on a particular individual, the police must feel free to bring an eyewitness into court to view possible suspects.[11] *State* v. *Long*, 293 N.C. 286, 290-291 (1977). *Hopkins* v. *State*, 269 Ind. 571, 574-575 (1978).

---

[10] Napolitano does not argue that the confrontation at Dedham occurred at a critical stage of his prosecution for murder. Thus, he does not claim that failure to inform his counsel of the identification procedure denied his Sixth Amendment right to counsel. See *Boyd* v. *Henderson*, 555 F.2d 56, 61 (2d Cir.), cert. denied, 434 U.S. 927 (1977). Compare *Saltys* v. *Adams*, 465 F.2d 1023, 1029 (2d Cir. 1972) (Friendly, J., dissenting).

[11] This situation must be distinguished from one where the identification in court is not a genuine effort to test a witness's ability to identify a suspect but rather is an attempt to bolster identification testimony. See *Martin* v. *Donnelly*, 391 F. Supp. 1241, 1248 (D. Mass. 1974).

In this case, the police did not have probable cause to arrest Napolitano at the time of the Dedham identification. It is clear that, without probable cause, the police could not detain him for investigatory purposes. See *Dunaway* v. *New York*, 442 U.S. 200 (1979); *Brown* v. *Illinois*, 422 U.S. 590 (1975). Cf. *Commonwealth* v. *Bumpus*, 362 Mass. 672, 676 (1972), judgment vacated and remanded on other grounds, 411 U.S. 945 (1973), aff'd on rehearing, 365 Mass. 66 (1974). Thus the police did not elect "to pursue an informal identification procedure for the purpose of avoiding a lineup conducted in accordance with constitutional requirements."[12] *Commonwealth* v. *Chase*, 372 Mass. 736, 742 (1977). Accord, *United States ex rel. Burton* v. *Cuyler*, 439 F. Supp. 1173, 1181 (E.D. Pa. 1977), aff'd 582 F.2d 1278 (3d Cir. 1978).

Though we find no constitutional infirmity in the identification procedure at Dedham, our holding does not imply approval of that procedure. While the Federal Constitution does not establish inflexible identification procedures (*Neil* v. *Biggers*, 409 U.S. 188, 199-200 [1972]) both the public and the prosecution benefit from identification procedures "which are more easily viewed as inherently fair and accurate." *Commonwealth* v. *Storey*, *ante* 312, 319 (1979). See *Commonwealth* v. *Balukonis*, 357 Mass. 721, 724 & n.3 (1970) (motion to suppress identification allowed where defendant's attorney, though present, was unaware of the identification procedure).

We think that it would have been preferable for the Commonwealth to have told the District Court judge that Napolitano was a suspect in an unrelated crime, and that a witness was being asked to identify him in the court room. The District Court judge then could have taken steps to minimize any suggestiveness by Napolitano's placement in the court room during the identification

---

[12] We note that the identification at Dedham was but one aspect of Weeks's identification of Napolitano, and that Bush and MacKenzie were not present at Dedham.

procedure. Alternatively, the Commonwealth could have informed the defendant's then-counsel and requested that Napolitano voluntarily participate in a lineup.

While we find no error in the denial of the motion to suppress, we think that when judicial proceedings are used as a means of identifying a particular individual, an effort must be made to eliminate any unnecessary suggestiveness. It is the Commonwealth's duty "not merely to secure convictions . . . [but] to secure them with due regard to the constitutional and other rights of the defendant." *Smith* v. *Commonwealth*, 331 Mass. 585, 591 (1954). *Commonwealth* v. *Tabor*, 376 Mass. 811, 819-820 (1978).

2. *Charge to the jury.* Napolitano claims that the judge committed reversible error in failing "to alert jurors to the vagaries of identification testimony by stressing the government's obligation to prove a defendant's identity beyond a reasonable doubt and by focusing the jurors' attention on the shortcomings of such proof."[13] See

---

[13] The judge instructed the jury: "Now, your function is to determine whether or not you are convinced beyond a reasonable doubt that when they [the identification witnesses] say to you under oath from this stand that's the man, are you convinced beyond a reasonable doubt that it is — it was? And that is why we allow the witnesses to be examined further and cross examined, as to what they base their statement to you here that that's the man, what was it based on. And you are entitled to take into consideration how long, under what circumstances a witness who tells you that's the man had to observe that person; whether or not they gave varying or inconsistent descriptions, whether they identified somebody else first or not, how they picked out the photographs. Was it a fair — and you will have the forty-four photographs — was that a fair show-up? You may take all these matters into consideration in determining whether you are going to believe when a witness says, 'Now, that's the man in front of you here,' regardless of what they said any place else, does that convince you beyond a reasonable doubt.

"You are also entitled, of course, to take into consideration and determine for yourselves the fact that a couple of other witnesses from this stand under oath before you said that is not the man. Again, he does not have to prove that he was not the man. But are you satisfied, in view of these other witnesses who say that's not him, and what opportunities they had to observe, whether they were able to make prior identifications, whether they were looking at the same man or

*United States* v. *Kavanagh*, 572 F.2d 9, 11 (1st Cir. 1978). Napolitano requested instructions patterned on those approved in *United States* v. *Telfaire*, 469 F.2d 552, 558 (D.C. Cir. 1972). See *United States* v. *Dodge*, 538 F.2d 770, 784 (8th Cir. 1976), cert. denied sub nom. *Alvarado* v. *United States*, 429 U.S. 1099 (1977); *United States* v. *Masterson*, 529 F.2d 30, 32 (9th Cir.), cert. denied, 426 U.S. 908 (1976); *United States* v. *O'Neal*, 496 F.2d 368, 373 (6th Cir. 1974). See also *United States* v. *Fernandez*, 456 F.2d 638, 644 (2d Cir. 1972).

Napolitano is correct in his assertion that a specific charge on identification was appropriate. In *Commonwealth* v. *Rodriguez, ante* 296, 301-302 (1979), we specifically approved an identification instruction modeled after that given in *United States* v. *Telfaire, supra.* In this case, however, the judge fully instructed the jury on the troublesome aspects of identification testimony. Compare *United States* v. *Dodge, supra,* with *United States* v. *Greene,* 591 F.2d 471, 476-477 (8th Cir. 1979).

During trial[14] and again in his final instructions to the

---

not, does that create a reasonable doubt in your mind that that isn't the man.

"Now, I don't think I have to say much about whether a lineup should have been used and wasn't used, or whether it could have been used right close to the time of the crime. I told you that there is no hard and fast rule that says that the police have to use one form of identification process over another. It's up to you to determine — was the form that was in fact used fair, and does it convince you beyond a reasonable doubt that this is the man."

[14] During the trial the judge instructed the jury as follows: "Mr. Foreman and other members of the jury, in the first instance I want to tell you that there is no rule that says that the police or the DA's Office has to use one method of identification over another. That is, there is no rule that says that if possible you have to use a line-up or that a line-up is better than any other way.

"There are various ways that the police have used which are approved. For example, the line-up is one, if possible. And this has been used quite often; you allow the witness, or give the witness an opportunity to see the suspect in a crowd of people. For example, coming out of his place of employment, you know, like a factory at the time when a shift ends or to see him in a crowd at a hockey game or any way.

"And one of the other ways is by using a photographic identification, which was used in this instance. Now, it will be your function to

jury, the judge emphasized that in weighing the identification testimony the jurors should consider the witness's opportunity to view, inconsistent descriptions given by the witness, and the fairness of the identification procedures. We find no error. In this, as in all other matters at trial, the judge demonstrated sound judgment and assured Napolitano a fair trial.

3. *Character evidence.* Napolitano argues that the judge erred in allowing the prosecution to present evidence that he owned "motorcycle-type" clothing, and that he visited a certain bar in Brighton. Napolitano contends that the prosecution thus impermissibly introduced evidence of his bad character. See *Commonwealth* v. *O'Brien,* 119 Mass. 342 (1876). We find no error.

The record discloses that three witnesses described the assailant's clothing as "motorcycle-type." Indeed, at trial such testimony was first elicited by defense counsel. Subsequently the prosecutor questioned Napolitano's girl friend concerning his ownership of clothing usually associated with motorcycle riders. We think the prosecutor's questions concerning Napolitano's "motorcycle-type" clothing were proper and clearly relevant to the identity of the assailant. The judge did not abuse his discretion in concluding that the probative value of the evidence outweighed its prejudicial effect. *Commonwealth* v. *Caine,* 366 Mass. 366, 370-371 (1974).

---

determine whether or not — whether other means were available is not the issue, but whether or not you are satisfied beyond a reasonable doubt that the method used, in this instance the photographic identification, was sufficiently reliable for you to base, if you are going to, a conviction of this defendant on, along with all the other evidence.

"And often after a partial identification from a photograph or any other means is used, the witness is brought into a place where the suspect is going to be — in this instance you've heard about this being done at the Dedham Court House on a particular day, and again you will be able to judge for yourself as to whether under the circumstances in which that show-up was made, that was a reliable method of obtaining an identification." See note 9, *supra.*

Evidence concerning Napolitano's visit to a bar in Brighton was elicited from Napolitano's girl friend by the prosecutor. The judge ruled that the question was an appropriate test of the witness's credibility in light of the witness's assertion that Napolitano never "frequented" establishments in Brighton. We find there was no abuse of judicial discretion. See *Commonwealth* v. *Flynn*, 362 Mass. 455, 470 (1972).

4. *Review under § 33E.* Pursuant to our responsibilities under G. L. c. 278, § 33E, we have reviewed the entire record for a consideration of the law and the evidence. The jury could have found as follows. An assailant shot Willett and McGuire after pushing them away from Weeks. The assailant then reloaded his gun and, after Weeks ran off, he fired several more shots at Willett, who was lying on the ground. The assailant then placed the gun on McGuire's chest and fired two more shots. Further, there were eight bullet wounds in McGuire's body, of which those in the chest "would cause rapid death," even if others were "survivable if medically treated." There were six bullet wounds in Willett's body, one of which entered the back of the head, "transversed the brain, and . . . would have been rapidly fatal." The major contested issue at trial was the identity of the assailant. The jury decided that Napolitano was the assailant. We find no reason to order a new trial or to direct the entry of a lesser degree of guilt.[15] See *Commonwealth* v. *Whipple*, 377 Mass. 709, 715-716 (1979).

*Judgments affirmed.*

---

[15] Defense counsel, with Napolitano's consent, stipulated that the question of manslaughter not be submitted to the jury. Defense counsel stated that he and his client considered any claim of manslaughter inconsistent with Napolitano's claim that he was not at the scene of the crime. Section 33E does not require that we second-guess such tactical decisions of a defendant and his counsel. Nevertheless, we have considered whether to direct the entry of a verdict of manslaughter under G. L. c. 278, § 33E. We think that on the facts presented, a claim of manslaughter is not compelling.