STATE OF CONNECTICUT *v.* JAMES NELSON
(2788)

HULL, SPALLONE and DALY, Js.

Argued May 8—decision released July 16, 1985

*Erskine D. McIntosh,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, *John Durham,* assistant state's attorney, and *Deborah Jeon,* legal intern, for the appellee (state).

DALY, J. The trial court found the defendant guilty of sexual assault in the first degree in violation of General Statutes § 53a-70 (a), burglary in the third degree in violation of General Statutes § 53a-103 (a) and lar-

ceny in the fourth degree in violation of General Statutes § 53a-125. From the judgment of conviction, the defendant has appealed,[1] challenging the victim's in-court identification of him.

The trial court found the following factual situation: The victim, a well educated graduate student, was asleep in her bedroom in a prone position when she was awakened about 6:30 a.m. by someone lying on top of her. Her assailant put his hand over her mouth, and threatened her in order to compel her to engage in sexual intercourse. It was light at the time, and her curtains were open. After her assailant left the premises, the victim went for assistance. When she later returned to her apartment, she determined that certain items of personalty were missing. The defendant's fingerprints were subsequently found in the apartment, although he was unknown to the victim and had never been given permission to enter the premises.

The victim made a written statement the following day and described her assailant as a black male, between twenty-five and thirty-five years old, with medium-brown skin, short hair, a stocky build and heavy shoulders, about five feet ten inches tall, with fat fingers and a fat thick neck. She described him as attired in a dark blue flannel shirt and light blue casual trousers.

Her written statement indicated that she could never be positive about the identification because she was nearsighted and did not have her glasses on. At the time of trial, some twenty-one months later, the victim positively identified the defendant, who was the only black male in the courtroom, as her assailant.

The defendant claims that the in-court identification was impermissibly suggestive and therefore contends

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. General Statutes § 51-199 (c).

that the denial of his motion to suppress the in-court identification of the defendant by the victim constitutes a deprivation of due process of law in violation of article first, §§ 8 and 9 of the constitution of Connecticut and of the fourteenth amendment to the constitution of the United States.

"The 'use of out-of-court police identification procedures may give rise to a claimed violation of due process of law if the conduct of the procedure in a given instance was "unnecessarily suggestive and conducive to irreparable mistaken identification," a claim whose adjudication, however, "depends on the totality of the circumstances surrounding it." ' " *State* v. *Gordon,* 185 Conn. 402, 412, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 (1982); *State* v. *Vass,* 191 Conn. 604, 608–609, 469 A.2d 767 (1983).

It is undisputed that there had been no pretrial out-of-court procedures herein. Therefore, there would have been no basis to suppress the victim's in-court testimony because there would have been nothing to taint it. *Commonwealth* v. *Cohen,* 269 Pa. Super. 309, 312, 409 A.2d 903 (1979).

The defendant argues that the in-court identification was impermissibly suggestive since the defendant was the only black male present in the courtroom. We know of no authority which would prohibit, as unduly suggestive, an exclusively in-court identification. *Mangrum* v. *State,* 155 Ga. App. 334, 335, 270 S.E.2d 874 (1980). While it did not render the in-court identification inadmissible, this factor is one to be considered by the trial court in weighing the testimony of the in-court identification. "The defendant had ample opportunity to extensively cross-examine the victim, a sufficient remedy to any suggestion inherent in the in-court identification process." State v. *Drew,* 360 So. 2d 500, 516 (La. 1978).

There are several methods by which defense counsel can reduce the suggestiveness of the identification. Among others, counsel could have requested a less suggestive setting. *Moore* v. *Illinois,* 434 U.S. 220, 230 n.5, 98 S. Ct. 458, 54 L. Ed. 2d 424 (1977). There is nothing in the record to suggest that counsel moved for an in-court lineup or to seat the defendant in the courtroom audience. *Commonwealth* v. *Napolitano,* 378 Mass. 599, 604, 393 N.E.2d 338 (1979).

Although the defendant now challenges the state's failure to engage in investigative procedures prior to trial, there was never a defense request for pretrial identification. "The state has no constitutional duty to conduct a line-up, voice test, semen analysis or any other laboratory test. . . . 'Absent constitutional barriers, so long as the witness has identified the defendant with reasonable probability, whether the identification is the result of a photo display, a line-up, a show-up, or otherwise, the evidence is admissible.' " *State* v. *Vass,* supra, 611–12.

The defendant, in attempting to suppress the identification evidence, has the initial burden of showing that the identification resulted from an unconstitutional procedure. *State* v. *Fullwood,* 193 Conn. 238, 244, 476 A.2d 550 (1984); *State* v. *Vass,* supra, 608. The defendant has not met this threshold burden.

Even if we assume arguendo, however, that the identification was unnecessarily suggestive, that does not end the inquiry into whether the identification is admissible at the trial. Because reliability is the linchpin in determining the admissibility of identification evidence, we must consider whether, under the totality of circumstances, the identification was reliable. " "The factors to be considered in determining the reliability of an identification "include the opportunity of the witness to view the criminal at the time of the crime, the wit-

ness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." ' " *State* v. *Theriault,* 182 Conn. 366, 373–74, 438 A.2d 432 (1980); *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).

We will consider the aforesaid factors seriatim. As for the opportunity of the victim to view her assailant, the assault occurred in her bedroom during early daylight and lasted for about twenty minutes. Although the victim was nearsighted, she got a good hard look at her assailant and has excellent short range vision without her glasses. She denied telling the detective that she could never identify her assailant, but claims to have told him that she could never be 100 percent certain. Her degree of attention was high. As to the accuracy of her prior description, except for the clothing, weight and hands, and a minor age discrepancy, her description was very accurate. Her degree of certainty in the identification was high. The delay of twenty-one months between the episode and the court confrontation did not faze her identification of the defendant.

Reliability is the linchpin in determining the admissibility of identification evidence. The trial court could reasonably have found, under our test for reliability, that there was not a very substantial likelihood of irreparable misidentification. *State* v. *Fullwood,* supra, 254.

There is no error.

In this opinion the other judges concurred.