## State of Connecticut v. Arthur Felder
### (3399)

Dupont, C. J., Hull and Daly, Js.

Argued February 6—decision released May 27, 1986

*Terrence J. Murphy, Jr.,* assistant public defender, for the appellant (defendant).

*George J. Duborg,* special assistant state's attorney, with whom, on the brief, was *James G. Clark,* deputy assistant state's attorney, for the appellee (state).

DALY, J. The defendant was convicted by a jury of sexual assault in the first degree in violation of General Statutes § 53a-70 (a). After the defendant's motion for acquittal was denied, the trial court sentenced him to fifteen years in prison. On appeal, the defendant claims (1) that there was insufficient evidence to sup-

port the conviction, and (2) that the court was in error in requiring him to sit at counsel table during the in-court identification procedure. We disagree and therefore find no error.

From the evidence adduced at trial, the jury could have reasonably found the following facts. On August 19, 1983, the fifteen year old black victim was residing in a three story house in South Norwalk with her grandparents, two uncles and a younger brother. About 10 a.m., she was watching television on the ground floor when her dog began to bark. She went outside to investigate and upon her return, she found a black male sitting on the living room couch. He asked to see the victim's uncle, Arthur Lee Walker, who was sleeping upstairs in a third floor bedroom. As the victim attempted to go upstairs to summon her uncle, the male grabbed her hands, pulled her onto the couch, removed her underclothing and penetrated her vagina. While he was on top of her with her hands pinned between their bodies, she screamed, bit him on the thumb, and scratched his face or neck but drew no blood because her fingernails were not long enough to do so. The victim was able to push her assailant off the couch and went to the kitchen looking for a knife. She heard the front door slam, and when she ran to the front door, saw a blue car with a black roof moving down the street. A black male wearing a tee shirt was driving the vehicle but she was unable to observe his face.

The victim then went upstairs, awakened her uncle, and told him of the attack and described her assailant as being the same height as her uncle, with short hair, dark skin, and wearing blue jeans, a white tee shirt and driving a blue Cadillac. She called her grandmother at the latter's place of employment, and then washed herself. When the grandmother arrived home, they went

together to the hospital. She told her grandmother that she had seen her assailant previously.

The physical examination took place at the hospital around noontime and disclosed no evidence of trauma. Seminal matter, however, was discovered in the victim's vagina and on her underwear, but a time frame of the deposits could not be ascertained. Fingernail scrapings did not indicate that she had scratched anyone.

The victim described her assailant to the police as being a black male, five foot eleven inches tall, with a short to medium "afro" hairdo, moustache, and bearing pimple marks on the face. She further described the assailant as wearing blue jeans, a white tee shirt and dirty sneakers. After working on a composite, she was shown a photo array which included a picture of the defendant. She picked out the defendant's photo. While her eyesight was not good without glasses, which she was not wearing at the time of the assault, she could make out persons, including the assailant, when they were within four steps of her. In addition, the uncle later told the police that the victim's description of the clothes and the car matched the description of a friend he knew as Pike, which is the defendant's nickname.

The victim made a positive in-court identification of the defendant, at which time the state first became aware that the victim knew the defendant. He lived around the corner some five hundred feet from her home. She had seen him once before and recalled that he was living with a girlfriend of hers.

The defendant did not testify but offered an alibi defense. He claims that he was at his bank at approximately 11:28 a.m., where he was photographed by the bank surveillance camera withdrawing $25 which he later used to purchase tires. He was arrested at about 2:15 p.m., in his blue Cadillac and, at the time, was

wearing blue jeans and a tee shirt. The bank is a nine minute drive from the victim's house. The defense offered testimony that the defendant was thirty-one years old, five foot four inches tall, weighed 140 pounds and wore side burns and had no pimples.

When a verdict is challenged because of insufficient evidence, the standard applied is whether the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Monk,* 198 Conn. 430, 432, 503 A.2d 591 (1986); *State* v. *Carter,* 196 Conn. 36, 44, 490 A.2d 1000 (1985); *State* v. *Nemeth,* 182 Conn. 403, 410, 438 A.2d 120 (1980). "The evidence must be given a construction most favorable to sustaining the jury's verdict." *State* v. *Carter,* supra, 44. In determining that each element of the crime charged is proved beyond a reasonable doubt, the jury may make reasonable and logical inferences but may not resort to speculation and conjecture. *State* v. *Monk,* supra, 433; *State* v. *Gaynor,* 182 Conn. 501, 503, 438 A.2d 749 (1980).

"We do not sit as a thirteenth juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility." *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984). In addition, we cannot retry the facts or judge the credibility of the witnesses. *State* v. *Monk,* supra.

The victim testified that she was absolutely certain that the defendant had been her assailant. General

Statutes § 53a-70 (a) provides in pertinent part that "[a] person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person . . . ." "Sexual intercourse" is defined as "vaginal intercourse" and "[p]enetration, however slight, is sufficient to complete vaginal intercourse . . . ." "Use of force" is defined in relevant part as "(b) use of actual physical force or violence or superior physical strength against the victim." General Statutes § 53a-65 (2) and (7). "The victim's testimony, if believed by the jury, was sufficient to establish beyond a reasonable doubt that the defendant compelled the victim to engage in sexual intercourse by the use of force." *State* v. *Monk,* supra, 433. The verdict indicates that the jury chose to believe the state's version of the evidence, and to disbelieve the defendant's version. Id.

The defendant next challenges his in-court identification by the victim as being impermissibly suggestive because he was the only black male in the courtroom and was seated prominently at the counsel table. The defendant relies on *United States* v. *Archibald,* 734 F.2d 938 (2d Cir. 1984), which held that the in-court identification of the black defendant seated next to the defense counsel during trial was in fact impermissibly suggestive, although harmless error.

Prior to the commencement of trial, but after the selection of the jury, the defense counsel renewed a previous request that his motion to suppress the out-of-court identification be heard before the beginning of the trial. The state was not ready to go forward with the motion at that time because a police officer witness involved in that identification could not be located. The court, therefore, ruled that the motion would be considered during the trial when it arose, outside the presence of the jury, and that no identification testimony would be heard until the motion was addressed.

The defendant claimed that he had a constitutional right to have the motion considered before trial, but would not object to its being heard during the trial if he would not be required to sit at the counsel table during or before the hearing on the motion. The court stated that the defendant could absent himself from the trial during and before the identification testimony if he waived his right to be present at trial. The defense counsel indicated, however, that the defendant wished to be present during the trial, as was his right, but wanted to be seated away from counsel's table to avoid any unnecessary suggestiveness as to his in-court identification. Presumably, the defendant did not want the victim's in-court testimony concerning any identification of him to be tainted by the victim's having seen him at the counsel table. The court denied the request and the defense counsel excepted to the ruling.

The prevailing view with regard to permitting a defendant to sit among the courtroom audience until identification is to leave the matter within the trial court's discretion. "Because of such potential suggestiveness, some trial judges have granted defense requests to place the defendant in an in-court lineup, or to seat the defendant in the courtroom audience, before and during the testimony of the prosecution's identification witnesses. . . . Such arrangements are desirable efforts to ensure fair trials. But we cannot find any support for the assertion that a defendant has a right to such an arrangement whenever he requests it. . . . [T]he procedure for in-court eyewitness identification is left to the trial judge's discretion. Absent abuse of that discretion . . . we should not question the trial judge's ruling." *United States* v. *Williams,* 436 F.2d 1166, 1168–69 (9th Cir. 1970); *Moore* v. *Illinois,* 434 U.S. 220, 98 S. Ct. 458, 54 L. Ed. 2d 424 (1977), on remand 577 F.2d 411 (7th Cir. 1978), cert. denied, 440 U.S. 919, 99 S. Ct. 1242, 59 L. Ed. 2d 471 (1979);

cf. *State* v. *Guthridge,* 164 Conn. 145, 154–56, 318 A.2d 87 (1972), cert. denied, 410 U.S. 988, 93 S. Ct. 1519, 36 L. Ed. 2d 186 (1973).

We find, however, that even if the in-court identification were impermissibly suggestive, the trial court's error in permitting such a procedure was harmless. The trial court has an obligation to ensure that an in-court identification procedure does not merely amount to a "show-up"; if it does, however, such testimony is not considered per se inadmissible, but its admissibility rather depends upon the totality of the circumstances. *United States* v. *Archibald,* supra, 941–42; *United States* v. *Kaylor,* 491 F.2d 1127, 1131 (2d Cir. 1973), vacated on other grounds sub nom. *United States* v. *Hopkins,* 418 U.S. 909, 94 S. Ct. 3201, 41 L. Ed. 2d 1155 (1974), citing *Neil* v. *Biggers,* 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972).

The factors contributing toward the reliability of the in-court identification, because of the totality of the circumstances, include the witness' opportunity to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the prior description of the criminal, the degree of certainty demonstrated when confronting the accused during identification, and the lapse of time between the crime and the confrontation. *State* v. *Nelson,* 4 Conn. App. 514, 517–18, 495 A.2d 298 (1985); see *Neil* v. *Biggers,* supra, 199–200; *State* v. *McKnight,* 191 Conn. 564, 572, 469 A.2d 397 (1983).

We will consider these factors in sequence. Regarding the victim's opportunity to view her assailant, the assault occurred in her living room during broad daylight. Although the victim was not wearing her glasses which she wears to see things at a distance, she managed to get a good closeup look at her assailant's face. Her degree of attention was high. As to the

accuracy of her prior description, she made a composite picture which bore a close resemblance to the defendant except for the nose. The description she gave her uncle of the assailant prompted the uncle to suggest to the police that the defendant might be a possible suspect. The victim had previously made a photo identification of the defendant, and recognized him because he lived with a friend of hers. The victim's degree of certainty in the in-court identification was high. Finally, the delay of five months between the episode and the court confrontation did not give rise to a substantial likelihood of misidentification of the defendant by the victim.

"[R]eliability is the linchpin in determining the admissibility of identification evidence." *State* v. *Doolittle,* 189 Conn. 183, 192, 455 A.2d 843 (1983). "The trial court could reasonably have found, under our test of reliability, that there was not a very substantial likelihood of irreparable misidentification." *State* v. *Nelson,* supra, 518.

There is no error.

In this opinion the other judges concurred.