******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBINSON, J., concurring. I share the majority's concern about the inherently suggestive nature of first time in-court identifications at criminal trials.[1] I am, however, concerned about the majority's election to decide the merits of the federal constitutional issues concerning such identifications raised by the defendant, Andrew Dickson, under these circumstances. In my view, this court's analysis more appropriately starts and ends with part V of the majority opinion, which "assume[s] that [the] in-court identification of the defendant [by one of the victims] was improperly admitted," but nevertheless "conclude[s] that any due process violation was harmless beyond a reasonable doubt." Given this conclusion, I believe that parts I through IV of the majority opinion appear to be inconsistent with our long held commitment to avoid unnecessarily deciding constitutional issues. See *Moore* v. *McNamara*, 201 Conn. 16, 20, 513 A.2d 660 (1986). This is particularly troublesome because the state's ultimate victory in this appeal renders the majority's analysis of a complex and controversial issue of federal constitutional law virtually unreviewable under the "usual rule" of the United States Supreme Court in its exercise of its certiorari jurisdiction, which is to deny petitions filed by prevailing parties. *Camreta* v. *Greene*, 563 U.S. 692, 709, 131 S. Ct. 2020, 179 L. Ed. 2d 1118 (2011); see also 28 U.S.C. § 1257 (a) (providing for certiorari jurisdiction over state court decisions).[2] Accordingly, I join only in part V of the majority's opinion and this court's ultimate decision to affirm the judgment of the Appellate Court upholding the defendant's convictions of assault in the first degree in violation of General Statutes § 53a-59 (a) (1), and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (4).

It is well settled that "[t]his court has a basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case. . . . The best teaching of this [c]ourt's experience admonishes us not to entertain constitutional questions in advance of the strictest necessity." (Citations omitted; internal quotation marks omitted.) *Moore* v. *McNamara*, supra, 201 Conn. 20–21; see *Parker* v. *Los Angeles*, 338 U.S. 327, 333, 70 S. Ct. 161, 94 L. Ed. 144 (1949); *Rescue Army* v. *Municipal Court*, 331 U.S. 549, 568–74, 67 S. Ct. 1409, 91 L. Ed. 1666 (1947); *Ashwander* v. *Tennessee Valley Authority*, 297 U.S. 288, 346–47, 56 S. Ct. 466, 80 L. Ed. 688 (1936) (Brandeis, J., concurring). "We do not take lightly our responsibility to act as the final arbiter in resolving issues relating to our constitution. . . . We also, however, do not engage in addressing constitutional questions unless their resolution is unavoidable." (Citations omitted.) *State* v.

*McCahill*, 261 Conn. 492, 501, 811 A.2d 667 (2002); see also *Kinsey* v. *Pacific Employers Ins. Co.*, 277 Conn. 398, 420–22, 891 A.2d 959 (2006) (*Zarella, J.*, concurring) (collecting authorities). The United States Supreme Court has described this doctrine of constitutional avoidance as "more deeply rooted than any other in the process of constitutional adjudication . . . ." (Internal quotation marks omitted.) *Rescue Army* v. *Municipal Court*, supra, 570 n.34.

This court often applies the doctrine of constitutional avoidance not to decide difficult questions of constitutional law when the state has established that any constitutional error will not affect the result of the appeal because it is harmless beyond a reasonable doubt. "Under such circumstances, it would [not be an efficient use of] judicial resources, and a pedantic exercise, to delve deeply into the constitutional merits of a claim that can appropriately be resolved in accordance with the relevant harmless error analysis." (Citations omitted.) *State* v. *Golding*, 213 Conn. 233, 241–42, 567 A.2d 823 (1989); see also *United States* v. *Hasting*, 461 U.S. 499, 509, 103 S. Ct. 1974, 76 L. Ed. 2d 96 (1983). For example, in *State* v. *Jordan*, 314 Conn. 89, 96, 101 A.3d 179 (2014), the defendant raised a complex challenge to the seizure of drugs from a closet near where he was arrested under the fourth amendment to the United States constitution. See id., 96–98 (noting questions over scope of *Arizona* v. *Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 [2009], with respect to searches incident to arrest under *Chimel* v. *California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 [1969]). Observing the "unsettled" nature of the law in this area given a "split" among the federal courts, this court "conclude[d] that the present case does *not* require us to weigh in on this debate. Even if we assume, without deciding, that the facts and the law should have led the trial court to suppress the evidence seized from the closet, we are fully convinced that any improper admission of the evidence is harmless beyond a reasonable doubt in light of the unchallenged evidence seized from the defendant's person." (Emphasis added.) *State* v. *Jordan*, supra, 100–101.

Identification cases like the present case are no exception to the doctrine of constitutional avoidance. Recently, in *State* v. *Artis*, 314 Conn. 131, 145, 101 A.3d 915 (2014), this court declined to consider a constitutional challenge to the reliability of an out-of-court identification that the state had conceded "was unnecessarily suggestive," because, "even if [the] identification testimony should have been suppressed, the state's use of that testimony is subject to harmless error review, and the state has proven beyond a reasonable doubt that the admission of the testimony was harmless." See also id., 155–56 (overruling *State* v. *Gordon*, 185 Conn. 402, 441 A.2d 119 [1981], cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 [1982], and

concluding that use of unreliable eyewitness identification resulting from unnecessarily suggestive procedure is not structural error and, therefore, subject to harmless error review). The majority opinion and Justice Zarella's concurring opinion comprehensively explore the divergent approaches taken by the United States Circuit Courts of Appeal and our sister states with respect to first time in-court identifications, and I need not repeat them here. Suffice it to say, given the deep division in the law in this area, I would follow the doctrine of constitutional avoidance, as exemplified by our recent decisions in *Artis* and *Jordan*, and not weigh in on the difficult federal constitutional issue in this case, in which the claimed due process violation is ultimately harmless error.[3]

Further weighing in favor of restraint is the fact that we already have a controlling precedent, *State* v. *Smith*, 200 Conn. 465, 469, 512 A.2d 189 (1986), which the majority overrules in part I of its opinion. That the majority's constitutional analysis implicates stare decisis[4] is even more reason that we should be reticent to resolve the defendant's federal constitutional claims. That doctrine "counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. . . . Stare decisis is justified because it allows for predictability in the ordering of conduct, it promotes the necessary perception that the law is relatively unchanging, it saves resources and it promotes judicial efficiency. . . . It is the most important application of a theory of decisionmaking consistency in our legal culture and . . . is an obvious manifestation of the notion that decisionmaking consistency itself has normative value." (Internal quotation marks omitted.) *State* v. *Artis*, supra, 314 Conn. 146.

The majority, however, supports its decision to overrule *Smith* and impose a constitutionally based prophylactic rule with respect to first time in-court identifications by observing that the United States Supreme Court "has the authority to overrule our decision" should it disagree with this court's resolution of the constitutional issue.[5] See footnote 11 of the majority opinion. I respectfully disagree with the majority's reliance on the United States Supreme Court's certiorari process as a safety net for its interpretation of the federal due process clause given the posture of this case, wherein the state ultimately prevails entirely by obtaining an affirmance of the defendant's convictions, albeit on harmless error grounds. This is because it is well settled that the "usual rule" of the United States Supreme Court is not to "[consider] prevailing parties' petitions [for writs of certiorari]" and, thus, that court would not be able to review the majority's analysis of the constitutional issue in the present case. *Camreta* v. *Greene*, supra, 563 U.S. 709.

Although the United States Supreme Court is not

precluded constitutionally or statutorily from granting a petition filed by a prevailing party,[6] it has stated that its "resources are not well spent superintending each word a lower court utters en route to a final judgment in the petitioning party's favor." Id., 704. The court, "therefore [has] adhered with some rigor to the principle that [t]his [c]ourt reviews judgments, not statements in opinions." (Internal quotation marks omitted.) Id.; see also *Bunting* v. *Mellen*, 541 U.S. 1019, 1023, 124 S. Ct. 1750, 158 L. Ed. 2d 636 (2004) (Scalia, J., dissenting from denial of certiorari) ("although the statute governing our certiorari jurisdiction permits application by 'any party' to a case in a federal court of appeals . . . our practice reflects a 'settled refusal' to entertain an appeal by a party on an issue as to which he prevailed"). "On the few occasions when we have departed from that principle, we have pointed to a policy reaso[n] . . . of sufficient importance to allow an appeal by the winner below." (Internal quotation marks omitted.) *Camreta* v. *Greene*, supra, 563 U.S. 704. I suggest that the United States Supreme Court's reviewability precedents disclose no such policy reason that would allow certiorari review in this otherwise routine criminal appeal.[7]

Particularly instructive on this point is *California* v. *Rooney*, 483 U.S. 307, 107 S. Ct. 2852, 97 L. Ed. 2d 258 (1987) (per curiam). In that case, the United States Supreme Court "granted the [s]tate's petition for certiorari to decide whether [the] respondent retained an expectation of privacy in a bag that he placed in the communal trash bin of a multi-unit apartment building," despite the fact that the state had prevailed entirely before a state appellate court, which had determined that there was sufficient other evidence beyond the trash bin search to support probable cause for the challenged warrant. Id., 308–11. Ultimately, the United States Supreme Court dismissed the appeal as improvidently granted, reasoning that the challenged "judgment . . . was entirely in the [s]tate's favor—the search warrant which was the sole focus of the litigation was deemed valid. The fact that the [state appellate court] reached its decision through analysis different than this [c]ourt might have used does not make it appropriate for this [c]ourt to rewrite the [state appellate] court's decision, or for the prevailing party to request us to review it. That the [state appellate court] even addressed the trash bin issue is mere fortuity; it could as easily have held that since there was sufficient evidence to support the search even without the trash evidence, it would not discuss the constitutionality of the trash search. *The [state appellate court's] use of analysis that may have been adverse to the [s]tate's long-term interests does not allow the [s]tate to claim status as a losing party for purposes of this [c]ourt's review.*" (Emphasis added.) Id., 311.

*Rooney* suggests, then, that it is extraordinarily unlikely that the Supreme Court would grant certiorari

to consider any challenge by the state to the majority's resolution of the merits of the defendant's federal constitutional claim. The ultimate judgment of the United States Supreme Court would have no practical effect whatsoever on the judgment of this court affirming the defendant's convictions. Thus, given the majority's conclusion in part V of its opinion that the state has proven any identification error in this case harmless beyond a reasonable doubt, I do not think it advisable to rely on the prospect of the United States Supreme Court's review to encourage us to go out on a federal constitutional limb with respect to the complex constitutional issue presented by the merits of the defendant's challenge to his first time in-court identification.[8]

Accordingly, I join in the judgment of the court.

[1] Like the majority, I refer to in-court identifications that have not been preceded by a successful out-of-court identification by the same witness as first time in-court identifications. See footnote 3 of the majority opinion.

[2] Section 1257 (a) of title 28 of the United States Code provides: "Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States."

[3] Other similar examples of constitutional avoidance abound in our jurisprudence. See, e.g., *State* v. *Santos*, 318 Conn. 412, 424–25, 121 A.3d 697 (2015) (confrontation clause); *State* v. *Randolph*, 284 Conn. 328, 375–76, 933 A.2d 1158 (2007) (declining to consider whether *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 [2004], applies to pretrial hearings because "the impropriety was harmless beyond a reasonable doubt because ample evidence existed to support the trial court's probable cause determination"); *State* v. *Brunetti*, 279 Conn. 39, 77, 901 A.2d 1 (2006) (claim under *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 [1966]), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007); *State* v. *Lemon*, 248 Conn. 652, 663, 731 A.2d 271 (1999) (declining to consider state constitutional claim concerning commentary on right to testify because "the defendant cannot prevail even under the . . . test that she advocates").

[4] As Justice Zarella aptly observes in his concurring opinion, the majority does not analyze whether *State* v. *Smith*, supra, 200 Conn. 465, or *State* v. *Tatum*, 219 Conn. 721, 728, 595 A.2d 332 (1991), which it also overrules, should receive any benefit from the doctrine of stare decisis.

[5] I recognize the existence of a debate, highlighted in footnotes 7 and 8 of Justice Zarella's concurring opinion and footnote 11 of the majority opinion, over whether the United States Supreme Court itself has the authority to articulate constitutionally based prophylactic rules, such as that of *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Until that court definitively states that *it* lacks such authority, I assume that this court shares the interpretive prerogative to articulate those prophylactic rules that it deems mandated by specific federal constitutional provisions, so long as those rules are not inconsistent with previous decisions of the United States Supreme Court. See *Ohio* v. *Robinette*, 519 U.S. 33, 39–40, 117 S. Ct. 417, 136 L. Ed. 2d 347 (1996) (rejecting, as inconsistent with *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 [1973], state supreme court's apparent holding that fourth amendment requires per se rule "requir[ing] police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary"); see also *Oregon* v. *Hass*, 420 U.S. 714, 719, 95 S. Ct. 1215, 43 L. Ed. 2d 570 (1975) ("a [s]tate may not impose such greater restrictions as a matter of federal constitutional law when this [c]ourt specifically refrains from imposing them" [emphasis omitted]); *State* v. *Ledbetter*, 275 Conn. 534, 559–60, 881 A.2d 290 (2005) (stating that "[w]e lack the authority to replace the [factors set forth in *Neil* v. *Biggers*, 409 U.S. 188, 199–200, 93 S. Ct. 375,

34 L. Ed. 2d 401 (1972)] on federal constitutional grounds" and that "[w]e lack the authority to hold now that, in light of additional scientific information, those factors no longer satisfy federal constitutional strictures"), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006).

[6] "Ordinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom. A party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it. . . . The rule is one of federal appellate practice, however, derived from the statutes granting appellate jurisdiction and the historic practices of the appellate courts; it does not have its source in the jurisdictional limitations of [article three of the United States constitution]. In an appropriate case, appeal may be permitted from an adverse ruling collateral to the judgment on the merits at the behest of the party who has prevailed on the merits, so long as that party retains a stake in the appeal satisfying the requirements of [article three]." (Citations omitted.) *Deposit Guaranty National Bank* v. *Roper*, 445 U.S. 326, 333–34, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980); see also *Camreta* v. *Greene*, supra, 563 U.S. 702 ("[w]e have previously recognized that an appeal brought by a prevailing party may satisfy [the] case-or-controversy requirement [set forth in article three]").

[7] My research disclosed three occasions on which the United States Supreme Court has granted a petition for certiorari filed by a party that prevailed entirely in a previous proceeding, all concerning judgments with some preclusive effect on the petitioner that gave it a continuing stake in the controversy. See *Camreta* v. *Greene*, supra, 563 U.S. 708–709 (adopting "exempt[ion]" to this policy for "one special category of cases," namely, civil actions in which government official was adjudged to have violated a party's constitutional rights, but nevertheless prevailed on grounds of qualified immunity because, otherwise the official "must either acquiesce in a ruling he had no opportunity to contest in this [c]ourt, or defy the views of the lower court, adhere to practices that have been declared illegal, and thus invite new suits and potential punitive damages" [internal quotation marks omitted]); *Deposit Guaranty National Bank* v. *Roper*, 445 U.S. 326, 334–36, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980) (appeal from denial of class certification filed by named plaintiff who had received offer of judgment for maximum amount of individual damages permitted under federal law); *Electrical Fittings Corp.* v. *Thomas & Betts Co.*, 307 U.S. 241, 242, 59 S. Ct. 860, 83 L. Ed. 1263 (1939) (judgment for defendant declaring patent valid, but not infringed).

[8] This is not to say that we should completely eschew the opportunity to scrutinize first time in-court identifications, which are inherently suggestive to the point of troubling in many cases. See, e.g., *State* v. *Nelson*, 4 Conn. App. 514, 516–17, 495 A.2d 298 (1985) (rejecting claim that "in-court identification was impermissibly suggestive since the defendant was the only black male present in the courtroom" because it was otherwise reliable). Rather than encroach on the authority that we share with the United States Supreme Court, I would consider utilizing our supervisory authority over the administration of justice, particularly in cases such as this one wherein reversal is not required and we are simply setting prophylactic rules to promote the fairness of future proceedings. See *State* v. *Carrion*, 313 Conn. 823, 851–52, 100 A.3d 361 (2014); accord *State* v. *Ledbetter*, 275 Conn. 534, 578–79, 881 A.2d 290 (2005) (utilizing supervisory authority to require specific jury instruction concerning certain risks of misidentification that are inherent in eyewitness identification evidence), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006); cf. *State* v. *Rose*, 305 Conn. 594, 605–606, 46 A.3d 146 (2012) (declining to consider whether it is structural constitutional error to require defendant to stand trial in identifiable prison clothing after resolving case under supervisory authority).